Argued and submitted July 14, reversed and remanded for resentencing
October 5, 1982

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# RAYMOND DELBERT WEDGE II,
*Petitioner on Review.*

## (CA A21873, SC 28477)

652 P2d 773

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was Gary D. Babcock, Public Defender.

William F. Gary, Solicitor General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and Thomas H. Denney, Assistant Attorney General.

CAMPBELL, J.

## CAMPBELL, J.

Following defendant's conviction in a jury trial, the trial court imposed a minimum five-year sentence for the use of a firearm following ORS 161.610(4),[1] even though the jury did not necessarily find that defendant had personally used or threatened to use a firearm. Defendant contends this minimum sentence is unconstitutional as a violation of his right to a jury under the Oregon Constitution. We agree and reverse.

---

[1] ORS 161.610 states:

"(1) As used in this section 'firearm' means a weapon which is designed to expel a projectile by the action of black powder or smokeless powder.

"(2) Prior to sentencing upon a felony conviction, it shall be the duty of the district attorney to advise the court, and the duty of the court to inquire, as to whether the defendant used or threatened to use an operable or inoperable firearm during the commission of the crime.

"(3) Unless the conviction necessarily establishes that the defendant used or threatened to use a firearm during the commission of the crime, or unless the defendant admits on the record that he used or threatened to use a firearm during the commission of the crime, whenever the court has reason to believe that the defendant so used or threatened to use a firearm, it shall set a presentence hearing on the matter. The parties may offer evidence and examine and cross-examine witnesses during the hearing.

"(4) Notwithstanding the provisions of ORS 161.605 or 137.010(2), if the court finds beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of the crime, it shall impose at least the minimum term of imprisonment as provided in subsection (5) of this section. Except as provided in subsection (6) of this section, in no case shall any person punishable under this section become eligible for work release or parole until the minimum term of imprisonment is served, less reductions of imprisonment for good time served, nor shall the execution of the sentence imposed upon such person be suspended by the court.

"(5) The minimum terms of imprisonment for felony convictions in which the court finds that the defendant used or threatened to use firearm shall be as follows:

"(a) Except as provided in subsection (6) of this section, upon the first conviction for such felony, five years.

"(b) Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years.

"(c) Upon conviction for such felony committed after imprisonment pursuant to paragraph (b) of this subsection, 30 years.

"(6) If it is the first time that the defendant is subject to punishment under this section, the court may suspend the execution of the sentence otherwise required under paragraph (a) of subsection (5) of this section, or impose a lesser term of imprisonment, when the court expressly finds mitigating circumstances justifying such lesser sentence and sets forth those circumstances in its statement on sentencing."

On February 17, 1981 two men disguised with face masks, one armed with a gun and the other with a knife, broke into Dennis McKinley's home and demanded money. The knifeman cut McKinley across the right shoulder. The gunman forced McKinley's wife and child to lie on the floor. McKinley gave them approximately $200, mostly in five dollar bills. The gunman put the money into his pocket. The robbers then demanded more money and marijuana. McKinley went to his bedroom, got his own gun, and shot at the gunman. McKinley saw no blood or other possible evidence of a wound except for a hole in the gunman's jeans. The knifeman then fought with McKinley and subdued him. McKinley escaped out the front door where he met a third masked man who hit him on the head with a gun. McKinley telephoned the police from a neighbor's home at 8:08 p.m. The three robbers left before the police arrived.

The same evening at 8:36 the defendant was admitted to a hospital about ten miles away with a gunshot wound in the lower abdomen. He had a sizable number of five dollar bills with him.

Defendant was charged by indictment with robbery in the first degree (two counts), burglary in the first degree, assault in the second degree (two counts), and theft in the first degree (two counts) and convicted on all counts following a trial by jury.

The circuit court merged all the convictions and sentenced defendant to 20 years' imprisonment for robbery in the first degree. He ordered defendant to serve a minimum of ten years pursuant to ORS 144.110(2).[2]

---

[2] ORS 144.110 states:

"(1) In any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes.

"(2) Notwithstanding the provisions of ORS 144.120 and 144.780:

"(a) The board shall not release a prisoner on parole who has been sentenced under subsection (1) of this section until the minimum term has been served, except upon affirmative vote of at least four members of the board.

"(b) The board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder under the provisons of ORS 163.095, except as provided in ORS 163.105."

■　　　The indictments[3] in the present case were worded in such a way that a jury could find that defendant was the

---

[3] The indictment filed against the defendant in Washington County contained in pertinent part the following language:

"The above-named defendant(s) is/are accused by the Grand Jury of Washington County by this indictment of the crime(s) of robbery in the first degree in Counts I and II, burglary in the first degree in County III, assault in the second degree in Counts IV and V, ex-convict in possession of a concealable firearm in Count VI, and theft in the first degree in Counts VII and VIII, committed as follows:

"That the above-named defendant (s) on or about the 17 day of February 1981, in Washington County, Oregon did unlawfully and knowingly use and threaten the immediate use of physical force upon Dennis Lee McKinley and Starlene Renee McKinley by brandishing a knife and cutting Dennis Lee McKinley with the knife, by pointing two firearms at both McKinleys, and by striking Dennis Lee McKinley with a firearm, and was armed with deadly weapons, to-wit: a long curve-bladed knife and two firearm handguns, while aided by two accomplices actually present, and while in the course of committing theft of property, to-wit: money and a pistol firearm, with the intent of compelling said McKinleys to deliver the said property to the said defendant,

"Count II

"as an alternative means of committing the crime alleged in Count I, the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly use and threaten the immediate use of physical force upon Dennis Lee McKinley and Starlene Renee McKinley by brandishing a knife and cutting Dennis Lee McKinley with the knife, by pointing two firearms at both McKinleys, and by striking Dennis Lee McKinley with a firearm, and did use and attempt to use a dangerous weapon, to-wit: a long curve-bladed knife, while aided by two accomplices actually present, and while in the course of committing theft of property, to-wit: money and a pistol firearm, with the intent of compelling said McKinleys to deliver the said property to the said defendant,

"Count III

"as part of the same act and transacation alleged in the above counts, the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly enter and remain in a building, to-wit: a dwelling, located at 11545 SW Beef Bend Road, Tigard, with the intent to commit the crime of robbery, assault and theft therein,

"Count IV

"as part of the same act and transaction alleged in the above counts, the above-named defendant on or about the 17 day of Februry, 1981, in Washington County, Oregon, did unlawfully and knowingly cause physical injury to Dennis Lee McKinley by means of a deadly and dangerous weapon, to-wit: a long curve-bladed knife, by cutting said McKinley,

"Count V

"as an alternative means of committing the crime alleged in County IV, the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly cause physical injury to Dennis Lee McKinley by means of a deadly and dangerous weapon, to-wit: a handgun firearm, by striking said McKinley with the firearm,

man with the knife rather than one of the gunman, and still find him guilty of all the offenses. Nor did the defendant admit on the record that he used a firearm so the convictions did not necessarily establish defendant's use of a firearm. At the sentence proceeding this situation was recognized by the court, which then found beyond a reasonable doubt, pursuant to ORS 161.610(4), that a firearm was used or threatened to be used by the defendant in the commission of these offenses, and imposed a five-year minimum term of imprisonment.[4] Defendant only appeals this five-year minimum term, contending that the finding by the court rather than by a jury of his personal use of a firearm violated his constitutional right to a trial by jury guaranteed by Article I, Section 11 of the Oregon Constitution.[5] In *State v. Hicks,* 38 Or App 97, 589 P2d 1130 (1979), construing a similar statute, former ORS 166.230, the court

---

"Count VI

"as part of the same act and transaction alleged in the above counts, the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly possess a firearm capable of being concealed upon the person, to-wit: two (2) handgun firearms, the said defendant having previously been convicted in Multnomah County, Oregon, on or about June 7, 1972, of the felonies of robbery and assault,

"Count VII

"as part of the same act and transaction alleged in the above counts, the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly commit theft of money, of the total value of more than two hunded dollars, the property of Dennis Lee McKinley,

"Count VIII

"as an alternative means of committing the crime alleged in Count VIII, [sic] the above-named defendant on or about the 17 day of February, 1981, in Washington County, Oregon, did unlawfully and knowingly commit theft of a firearm, to-wit: a pistol revolver, the property of Dennis Lee McKinley, * * *"

On defendant's motion count VI was severed, and counts VII and VIII renumbered to VI and VII.

Although defendant was found guilty of count V (assault with a firearm) this is not dispositive of the issue presented because he could have been found vicariously liable as an aider and abetter.

[4] This question is not moot because under the terms of ORS 144.110 the ten year minimum may be set aside by a vote of four of the five members of the parole board.

[5] Article I, Section 11 of the Oregon Constitution states:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."

stated that an enhanced penalty can be given only to a person who has actual physical possession of a gun during the commission of a felony because there is no statutory basis for enhanced penalty based on vicarious liability. We agree with this interpretation. The court would be without authority to sentence defendant if there were no finding he personally used or threatened to use a firearm.

We approve the Court of Appeals explanation of ORS 161.610 in *State v. Warner,* 52 Or App 987, 630 P2d 385 (1981):

> "* * * ORS 161.610, enacted in 1979, requires the trial court to impose a minimum term of imprisonment if the court finds beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of a felony. The minimum term which must be imposed increases with each successive felony committed with a firearm. The first conviction carries a minimum term of five years, the second a minimum term of 10 years and the third a minimum term of 30 years. A person sentenced under ORS 161.610 is ineligible for work release or parole until the minimum term is served. Additionally, the trial court may not suspend the execution of the person's sentence. An exception is made where it is the defendant's first offense with a firearm, and the court expressly finds mitigating circumstances justifying a lesser sentence than that required under the statute." (Footnotes omitted). *State v. Warner, supra,* 52 Or App at 989.

The court then explained the effect:

> "* * * ORS 161.610 does not *increase* the defendant's sentence in any way; it simply provides for a *minimum* term of imprisonment when a firearm is used, or threatened, in the court of a felony.
>
> "Prior to the enactment of ORS 161.610, Oregon law provided that a person who committed a felony while armed with a firearm could receive an additional sentence of up to 10 years beyond the term imposed for the crime itself. *See* former ORS 166.230 (1977). In *State v. Howe,* 26 Or App 743, 554 P2d 605, *rev den* (1976), this court held that the statute could not be used to enhance a sentence for first degree robbery because it would be punishing the defendant twice for the same behavior. *See also, State v. Shipley,* 39 Or App 283, 592 P2d 237 (1979).

"In contrast to former ORS 166.120, however, ORS 161.610 does not increase the length of defendant's sentence but, instead, insures that a portion of defendant's sentence, without the possibility of parole, will, in fact, be served. An examination of the legislative history reveals that the legislature intended ORS 161.610 to apply to all felonies involving the use or threatened use of a firearm. The legislative purpose is clearly to provide for mandatory minimum prison term whenever a firearm is used, or its use is threatened, during the commission of a felony." (Footnotes omitted). *State v. Warner, supra,* 52 Or App at 991-992.

The court stated the purposes as:

"* * * ORS 161.610 expresses a legislative judgment that persons who commit felonies while armed with guns should serve a certain amount of time in jail, period. With the single exception already discussed, the legislature permits no participation by the trial judge or Parole Board in this decision. This is, in fact, a legislative sentence. * * *" *State v. Warner, supra,* 52 Or App at 993.[6]

**2.** There is no right to a jury for sentencing under the United States Constitution, even in a capital case. *Proffitt v. Florida,* 428 US 242, 96 S Ct 2960, 49 LEd 2d 913 (1976). Nor does the Oregon Constitution mandate jury participation in sentencing. *State v. Dixon,* 238 Or 121, 124, 393 P2d 204 (1964). The Kansas Supreme Court, in *State v. Mullins,* 223 Kansas 798, 800, 577 P2d 51 (1978), upheld a similar statute explaining:

"While K.S.A. 1977 Supp. 21-4118 limits the range of authorized dispositions available to the trial court in some instances, it does not create a new class of crimes, add a new element to the statutory definition of already existing crimes, or provide for an additional sentence. Use of a firearm under the statute is not made an element of the offense charged, and is only pertinent to the authorized disposition the court may consider in the event of a conviction."

Defendant argues, however, that *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), is controlling in the present case. In *Quinn* this court struck down ORS 163.116

---

[6] The right to trial by jury was neither raised nor considered in *State v. Warner,* 52 Or App 987, 630 P2d 385 (1981).

imposing a death sentence for murder as unconstitutional because it violated defendant's right to a trial by jury. The defendant's state of mind was an essential element of homicide, and the statute required the judge, rather than the jury, to determine the greater mental state for which a penalty of death could be imposed. We held in that case that a defendant has a constitutional right to have all elements of the crime (for which a defendant is subject to punishment) decided by a jury. However, in *Quinn* we recognized that not all enhanced penalty statutes are unconstitutional:

> "We have upheld other enhanced penalty statutes even though they required additional post-trial findings by the court as a basis for a greater sentence. In particular, we have upheld the former Habitual Criminal Act and sexually dangerous offender statutes over challenges that the procedures violated the right to trial by jury of the facts upon which enhanced punishment was to be based. The difference between those statutes and ORS 163.116(2)(a), however, is found in the simple principle that the facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing court.

> "Our decision in *State v. Hoffman,* 236 Or 98, 385 P2d 741 (1963) illustrates the principle. There we considered post-trial habitual criminal proceedings in which the judge was to determine the existence of prior convictions and, if found, to enhance the sentence. We held that the procedure did not violate the defendant's right to a jury trial of the facts constituting the crime for which defendant was to be sentenced:

>> 'In our opinion, the words "criminal prosecution," as set forth in Article I, Section 11 of our constitution, refer to establishing before a jury acts declared to be criminal by legislative action. Since proof of prior crimes is not a proper matter in an indictment for a present crime, but only proof that prior punishment has not been effective to reform the person, the defendant was not entitled to a jury trial relative to his prior convictions. * * *' 236 Or at 107."

> "Unlike the prior convictions in *Hoffman,* deliberation in the act of homicide is part of an act declared by the legislature to be criminal. Because the extent of punishment is to be determined according to the existence of that

proscribed fact, it must be proved at trial. *See State v. Stockett.* [278 Or 637, 565 P2d 739 (1977)]

"Similarly, we held in *State v. Durham,* 177 Or 574, 164 P2d 448 (1945), that a jury trial to determine prior convictions upon which an enhanced penalty was based was not constitutionally necessary because:

'It is not an offense to be an habitual criminal; it is merely a status.' 177 Or at 582." *State v. Quinn, supra,* 290 Or at 405-406.

In *Quinn* we stated as a simple principle that facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing judge. The application of this simple principle is not always so simple. The present fact to be found describes an act in the commission of the crime which determines the maximum penalty to which the defendant is subject. In order to decide whether a jury determination is required in the present case, one must look beyond this categorization. We also said in *Quinn* that facts which go to the criminal acts for which a defendant is to be punished must be proved to a jury's satisfaction unless admitted or waived. *Quinn, supra,* 290 Or at 406.

The use or threatened use of a firearm is a finding that goes to the criminal act for which this defendant is punished, and thus is closer to an element of the crime than to a characterization of the defendant. Also, in both *Quinn* and the present case the finding in question is restricted to the one crime at issue in contrast to the posttrial habitual criminal and the sexually dangerous offender proceedings in which the scope of inquiry is not so limited.

In *Quinn* we differentiated between subsections (2)(a) and (2)(b) in the former ORS 163.116. Subsection (2)(b) directs the trial judge to consider:

"(b) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In determining this issue, the trial judge shall consider any mitigating circumstances offered by the defendant, including, but not limited to, the defendant's age, the extent and severity of his prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed: * * *"

These findings are the kind that may be properly considered by the court "for the purpose of determining the kind and character of the man upon whom sentence is to be imposed," *State v. Hicks,* 213 Or 619, 630, 325 P2d 794 (1958). However the findings required under (2)(a),

> "(a)  Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result; * * *"

go to the criminal acts for which the defendant is to be punished and this determination must be made by the jury. *Quinn, supra,* 290 Or at 406.

■   Although the challenged statute is denominated an enhanced penalty statute, in effect it creates a new crime. The jury only considered evidence offered on the question of first degree robbery, and convicted him of that offense, but the defendant was sentenced on the basis of having been found guilty of the crime of "first degree robbery using a firearm." If the legislature had actually described the crime as "first degree robbery using a firearm" the use of a firearm would certainly be an element and there would be no doubt defendant would have a right to a jury determination of guilt. The legislature cannot eliminate constitutional protections by separating and relabeling elements of a crime.

Although in the present case the statutory mandatory minimum does not increase defendant's penalty, this would not always be true. Suppose our defendant is later convicted of a Class C felony, which carries a maximum sentence of five years. ORS 161.605(3). If either the jury or the court finds the use or threatened use of a firearm in this second felony, the court will be required to impose a ten year minimum sentence if ORS 161.610(5)(6) is literally applied. If he were convicted of a third felony in which he used or threatened to use a firearm after serving the ten year minimum pursuant to ORS 161.610 (5)(b), a defendant would be forced to serve a minimum sentence of 30 years under ORS 161.610(5)(c) regardless of the classification of the felony, even though the maximum penalty proscribed by the legislature is 20 years for a Class A felony and 10 years for a Class B felony. ORS 161.605(2)(3). This might

be a violation of defendant's constitutional right to a trial by jury, because he would be receiving an additional sentence based on the factual finding by the judge of the use of a firearm in the first conviction.

Under the facts of this case, we hold the defendant was deprived of his constitutional right to a jury trial on the issue raised in this case.

Reversed and remanded for resentencing.