Argued and submitted November 30, 2004, affirmed February 16, appellant's petition for reconsideration filed March 2 allowed by opinion May 18, 2005 See 199 Or App 521 (2005)

# STATE OF OREGON,
*Appellant,*

*v.*

# OSCAR IGNACIO GUTIERREZ,
*Respondent.*

## 010735026; A119840

106 P3d 670

Jennelle Meeks Barton, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

BREWER, C. J.

---

* Brewer, C. J., *vice* Deits, J. pro tempore.

### BREWER, C. J.

A jury convicted defendant of felony fleeing or attempting to elude a police officer.[1] ORS 811.540(1)(b)(A). At sentencing, the trial court ordered defendant to pay restitution for damage that he caused to a police car while attempting to flee. The court also imposed 36 months' probation, twice the presumptive probation sentence. On appeal, defendant does not challenge his conviction, but he argues that the court failed to consider his financial circumstances before ordering him to pay restitution. He also argues that his probationary sentence is unlawful under *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), and *Blakely v. Washington*, 542 US _____ , 124 S Ct 2531, 159 L Ed 2d 403 (2004), because the court based the sentence on aggravating factors to which he did not admit and that the state did not prove to the jury beyond a reasonable doubt.[2] Defendant concedes that the latter argument is unpreserved, but he contends that we may review it as error apparent on the face of the record. We affirm.

The police were summoned to a residence in Portland after defendant entered the residence uninvited. When they arrived, they saw defendant leaving and ordered him to stop. Defendant drove away in his van, and the officers pursued him with their emergency lights and sirens on. Defendant did not pull over, and more patrol cars joined the pursuit. The police attempted to stop the van by steering into it to try to make defendant lose control. The first attempt failed, but a second succeeded; the van spun, and defendant came to a

---

[1] The jury also convicted defendant of fourth-degree assault (Count 1), first-degree criminal trespass (Count 2), and reckless driving (Count 4). Defendant does not challenge those convictions or the sentences imposed thereon.

[2] After oral argument in this case, the United States Supreme Court decided *United States v. Booker*, 543 US _____ , 125 S Ct 738, 160 L Ed 2d 621 (2005), in which the Court applied *Blakely* to the federal sentencing guidelines. The Court held that departure sentences imposed under the guidelines violate the Sixth Amendment to the United States Constitution, but it severed the provisions in the guidelines that made presumptive sentences mandatory in the absence of aggravating factors. *Cf. State v. Dilts*, 337 Or 645, 103 P3d 95 (2004) (declining to sever mandatory provisions from Oregon's sentencing guidelines); *State v. Gornick*, 196 Or App 397, 411-12, 102 P3d 734 (2004) (same). Because we do not reach the merits of defendant's argument under *Blakely*, we need not consider whether *Booker* has any application here.

stop on the unpaved shoulder of a freeway on-ramp. Several officers positioned their cars around the van, but defendant again attempted to drive away. The van hit one of the patrol cars, causing damage to the patrol car's left front fender and causing its airbags to deploy. The officers apprehended defendant when he jumped out of the van and attempted to run away.

A jury convicted defendant of one count each of fourth-degree assault (Count 1), first-degree criminal trespass (Count 2), felony fleeing or attempting to elude a police officer (Count 3), and reckless driving (Count 4). At sentencing, the state asked that defendant be ordered to pay restitution of $7,863.66, the cost to repair the damaged patrol car. Defendant objected, arguing that he had no ability to pay that amount. Defendant's counsel noted that defendant had been in jail for 15 months at that point. She also argued that defendant did not have a regular profession, that he worked part time when work was available, and that he earned "a hundred, a hundred fifty dollars a day doing painting, dry wall, that sort of thing." Counsel also asserted that defendant was facing charges in the State of Washington and asserted that, as a result of his conviction in this case, defendant could be deported by the United States Immigration and Naturalization Service (INS). The state responded that defendant was young and healthy and had the ability to earn money. With respect to defendant's immigration status, the state asserted that its recommendation was made with the assumption that defendant would remain in the community. It noted that he had not previously been deported in spite of having three prior convictions for driving under the influence of intoxicants. The state argued that it was logical to assume that defendant would remain in the community and that he should be sentenced accordingly.

The trial court rejected defendant's argument that he lacked the ability to pay, and it ordered him to pay $7,863.66 in restitution. The court imposed no particular payment terms. In addition, for the convictions on Counts 1 and 2, the court imposed consecutive sentences of 12 months and six months in jail, respectively. For Count 4, the court sentenced defendant to a five-year term of probation. For

Count 3, the presumptive sentence was 18 months' probation. OAR 213-017-0010. However, the court found that the harm or loss that defendant caused was significantly greater than typical for the offense and that there were multiple victims or incidents. Accordingly, it imposed an upward durational departure sentence of 36 months' probation. The sentences imposed on Counts 3 and 4 did not include jail time as a condition of probation. The court entered a judgment reflecting defendant's convictions and sentences, and this appeal followed.

In his first assignment of error, defendant argues that the trial court failed sufficiently to consider his ability to pay when it imposed restitution. He asserts that the court did not inquire into the nature of the charges in Washington or how much prison time he would be facing there. Defendant also argues that, although there was evidence that he had been earning up to $750 per week before his arrest, there was no evidence that he could continue to earn that amount after serving his consecutive 6- and 12-month incarceration terms. Finally, he contends that, if he is deported, given his work skills and education, it is unlikely that he can pay the restitution unless he returns to the United States illegally. He asserts that, although the state argued at trial that he would be allowed to stay in this country, there is no evidence that that is the case. Defendant argues that a court cannot base a person's ability to pay on the assumption that the person will engage in unlawful activity in order to do so.

In a separate argument in support of his first assignment of error, defendant contends that the imposition of restitution violated his right to trial by jury under the Sixth Amendment to the United States Constitution, as construed in *Blakely*, because the trial court, rather than the jury, determined the amount of restitution. Defendant concedes that he did not raise that argument before the trial court, but he contends that it is reviewable as error apparent on the face of the record.

In response to defendant's statutory argument, the state contends that defendant bore, and failed to meet, the burden of proving that he could not pay restitution. The state asserts that the record does not conclusively establish that

defendant would be unable to pay. It argues that the trial court was not required to speculate as to whether defendant would be deported or what effect deportation might have on his ability to pay. Finally, the state argues that the record does not establish that the trial court failed to consider defendant's ability to pay before ordering restitution.

■■ We begin with defendant's statutory argument. The imposition of restitution is governed by ORS 137.106.[3] The applicable version of that statute provided, in part:

> "(1) When a person is convicted of a crime * * * that has resulted in pecuniary damages, unless the presentence investigation report contains such a presentation, the district attorney shall investigate and present to the court, prior to or at the time of sentencing, evidence of the nature and amount of such damages. In addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

> "(2) In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

> "(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

> "(b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and

> "(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment."

A restitution order is proper if, "in light of the record as a whole, a trial court reasonably could have imposed it." *State v. Hart*, 329 Or 140, 148, 985 P2d 1260 (1999).

Here, defendant acknowledges that a court "must consider a defendant's financial circumstances before imposing the *amount* of restitution to be repaid under ORS 137.106." (Emphasis added.) But he does not specifically object to the amount of restitution ordered or to the payment

---

[3] The 2003 Legislative Assembly amended ORS 137.106. Or Laws 2003, ch 670, § 1. However, the 2001 version of the statute applies here. Accordingly, unless otherwise noted, we refer to the 2001 version.

terms. He appears to focus primarily on the notion that *any* amount or terms would be unreasonable because the record does not establish that he will ever be able to pay the restitution. In other words, his primary argument appears to be that the trial court erred in imposing restitution at all.

That argument is unavailing. In *State v. Edson,* 329 Or 127, 132-33, 985 P2d 1253 (1999), the Supreme Court explained that ORS 137.106(1) sets out the prerequisites to a decision to order restitution, while ORS 137.106(2) provides the criteria that a court must consider in determining the amount of restitution and the conditions under which it should be paid. The only factors that pertain to ORS 137.106(1) are criminal activities, pecuniary damages, and a causal relationship between the two; ability to pay is not a factor that courts are required to consider when deciding *whether* to impose restitution:

> "[A]lthough both [the defendant in *Edson*] and the Court of Appeals appear at times to treat a defendant's financial circumstances as relevant to the *permissibility* of imposing a sentence of restitution under ORS 137.106(1), that is not what the statute provides. The plain wording of that statute leaves the decision *whether* to sentence a defendant to make restitution to the discretion of the trial court."

*Edson,* 329 Or at 132 (emphasis in original). Courts are required to consider a defendant's ability to pay only when determining the amount of restitution and the terms or conditions of payment. *See id.* at 133 ("Once the trial court decides to impose restitution, ORS 137.106(2) sets out the criteria that the court must consider in determining the amount of restitution (complete, partial, or nominal) and the conditions under which it should be paid.").

■　　Thus, if defendant's objection is to the trial court's decision to impose restitution at all, his argument is not well taken. To the extent that the intended target of his argument is the amount of restitution ordered, we turn to that issue.[4]

---

[4] To the extent that defendant's argument can be construed as an objection to the payment terms—or, more precisely, the lack thereof—in the restitution order, defendant did not ask the trial court to consider ordering payment on an installment basis. We therefore decline to consider that issue because it is unpreserved.

■ ORS 137.106(2) requires a sentencing court to "take into account" the defendant's ability to pay, but it does not require the court to inquire on the record or to make findings of fact with respect to that issue. *Hart*, 329 Or at 148. It is apparent from our review of the sentencing hearing transcript and the presentence investigation report (PSI), which the trial court had before it at that hearing, that the court adequately took into account defendant's ability to pay. Defendant placed the issue of his ability to pay before the court, and both parties made assertions in support of their positions. Aside from the fact that the court did not deem defendant's assertions to be dispositive, defendant suggests no reason to believe that the court did not take them into account.

■ Moreover, we agree with the state that the court was not required to give dispositive weight to speculation that defendant might be deported or otherwise be unable to earn an income. "A trial court's authority under ORS 137.106 is restricted only where the record establishes *conclusively* that a defendant has no ability, presently and in the future, to pay a particular amount of restitution according to the schedule or terms that the court has imposed." *State v. Hval*, 174 Or App 164, 180, 25 P3d 958, *rev den*, 332 Or 559 (2001) (emphasis in original). The record does not establish that defendant has no ability to pay restitution; it shows, at most, only that he *might* not be able to pay because he *might* later be imprisoned in Washington or be deported by the INS. To the contrary, the record shows that he does have the ability to pay: Both the PSI and defendant's counsel indicated that defendant, who was 32 years old at the time of the sentencing hearing, could earn up to $750 per week. Nothing in the record establishes that defendant would not be able to continue to earn money after serving the incarcerative portions of his sentence. The trial court reasonably determined that defendant would be able to pay the amount of restitution ordered.

■ We turn next to defendant's constitutional argument. In *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the United States Supreme Court held that any fact, other than the fact of a prior conviction, that increases the penalty for an offense beyond the statutorily prescribed maximum must be proved to a jury beyond a

reasonable doubt. In *Blakely*, the Court explained that, for purposes of *Apprendi*, the statutorily prescribed maximum is the longest sentence that a court may impose based solely on facts reflected in the jury's verdict or admitted by the defendant. 542 US at ___ , 124 S Ct at 2537. The Court recently reaffirmed those principles in *United States v. Booker*, 543 US ___ , 125 S Ct 738, 160 L Ed 2d 621 (2005).

We have discretion to consider an unpreserved error, provided that it is an error of law and is "apparent on the face of the record." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). An error is "apparent" if it is obvious and not reasonably in dispute. *Id.* It appears "on the face of the record" if we "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *Id.* If we exercise our discretion to review a plain error, we must articulate our reasons for doing so. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

Defendant's argument raises two issues: (1) whether defendant was entitled to have the amount of restitution determined by the jury and (2) whether the state was required to prove that amount beyond a reasonable doubt. It is not clear that either of those rights applies to restitution proceedings. By its terms, *Apprendi* applies to increases in the incarcerative portion of sentences. However, the applicability of the right to jury trial generally depends on the seriousness of the stigma and loss of liberty associated with a conviction. *See Blanton v. North Las Vegas*, 489 US 538, 541-42, 109 S Ct 1289, 103 L Ed 2d 550 (1989) (right to jury trial applies only if offense is "serious"; offense is presumed to be petty if maximum authorized incarcerative term does not exceed six months); *Scott v. Illinois*, 440 US 367, 374, 99 S Ct 1158, 59 L Ed 2d 383 (1979) (right to appointed counsel for indigents applies only if imprisonment is actually imposed). The loss of liberty and the stigma associated with conviction also motivated the Court's decision in *Apprendi*:

> "Prosecution subjects the criminal defendant both to 'the possibility that he may lose his liberty upon conviction and * * * the certainty that he would be stigmatized by the conviction.' We thus require this, among other, procedural protections [*sic*] in order to 'provid[e] concrete substance for the

presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously."

530 US at 484 (ellipsis and last brackets in original; citations omitted).

Restitution does not increase the loss of liberty that a defendant suffers; also, arguably, the stigma associated with restitution is insufficient to trigger the right to jury trial and proof beyond a reasonable doubt. *See United States v. Nachtigal*, 507 US 1, 5, 113 S Ct 1072, 122 L Ed 2d 374 (1993) (holding that a potential five-year term of probation did not trigger the right to trial by jury, even though restitution was a possible condition of probation). Because restitution does not implicate liberty interests in the same manner as incarceration, *Apprendi* and *Blakely* arguably do not apply to its imposition. *See United States v. Swanson*, 394 F3d 520 (7th Cir 2005) (holding *Apprendi*, *Blakely*, and *Booker* inapplicable, in part because there is "no risk that the defendant has been convicted *de facto* of a more serious offense"); *United States v. Behrman*, 235 F3d 1049, 1054 (7th Cir 2000) (holding *Apprendi* inapplicable "because restitution for harm done is a classic civil remedy"). Because the unpreserved issues before us remain open and are reasonably in dispute, it follows that the trial court did not commit plain error in imposing restitution without committing the issue to a jury for determination beyond a reasonable doubt.

In his second assignment of error, defendant challenges the trial court's imposition of a departure sentence on Count 3. He argues that, because the court imposed the departure based on facts to which he did not admit and that the jury did not find, the sentence is invalid under both state and federal constitutional principles. In support of his argument under the Oregon Constitution, defendant relies on *Wedge*. In that case, the Oregon Supreme Court held that, under Article I, section 11, of the Oregon Constitution "facts which go to the criminal acts for which a defendant is to be punished must be proved to a jury's satisfaction unless admitted or waived" by the defendant, whereas facts that "characterize the defendant are for the sentencing judge."

293 Or at 607. Defendant contends that the aggravating factors used by the court to support the departure sentence pertain to the criminal acts for which he was punished. He asserts that, because the jury did not find the aggravating factors and because he did not admit to them or waive the right to have the jury determine them, the court could not rely on them at sentencing. Defendant's argument under the United States Constitution is similar. He argues that, under *Blakely*, the trial court violated defendant's Sixth Amendment rights by imposing a departure sentence based on facts not reflected in the jury's verdict. Again, defendant acknowledges that he did not raise either issue at the sentencing hearing, but he contends that both are reviewable under the plain error doctrine.

The state responds that defendant's departure sentence was not plainly erroneous under either state or federal law. The state argues that the applicability to this case of the principles in both *Wedge* and *Blakely* is reasonably in dispute. With respect to the Sixth Amendment, the state notes that the principle at play in *Blakely* has been applied only to sentences of incarceration and to death sentences. The state argues that it is unclear whether that principle extends to probation, because the deprivation of liberty is less significant. The state raises similar arguments under Article I, section 11.

We decline to consider whether defendant's sentence on Count 3 is an error apparent on the face of the record. We will not reverse a trial court's judgment based on an error that does not affect a substantial right of the defendant. ORS 138.230; *State v. Doern*, 156 Or App 566, 573, 967 P2d 1230 (1998), *rev den*, 328 Or 666 (1999). As discussed, for Counts 3 and 4, the trial court sentenced defendant to concurrent probationary terms of three and five years, respectively, and it imposed the same conditions of probation for both sentences. Defendant challenges only the three-year probationary term. It follows that remanding for resentencing on Count 3 would have no practical effect; either way, defendant is subject to a five-year probationary term.

Because defendant identifies no adverse consequences to him as a result of the sentence on Count 3, any

error in imposing that sentence was harmless. *Cf. State v. Sullivan*, 197 Or App 26, 31, 104 P3d 636 (2005) (declining to exercise discretion to review for plain error where allegedly erroneous five-year probationary sentence was imposed concurrently with two other—unchallenged—five-year probationary sentences); *State v. Tremillion*, 111 Or App 375, 376, 826 P2d 95, *rev den*, 313 Or 300 (1992) (holding that error in imposing sentence of 15 to 18 months on one count was harmless given that the sentence was imposed concurrently to a 58-month sentence for another count, because the error could not affect the defendant's actual period of imprisonment); *see also State v. Baker*, 119 Or App 144, 145, 848 P2d 661 (1993) (holding that sentencing error "requires no remedial action" because the challenged 21-month sentence was concurrent to a 24-month term imposed in a separate case). One of the factors that we consider in deciding whether to exercise our discretion to correct a plain error is the gravity of the error. *Ailes*, 312 Or at 382 n 6. Because we conclude that any error here was harmless, we decline to exercise our discretion to consider defendant's second assignment of error.

Affirmed.