STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIS THERMAN HAWKINS,
aka Billy Willis Hawkins,
*Defendant-Appellant.*

Multnomah County Circuit Court
090130026; A147739

323 P3d 463

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.*

NAKAMOTO, J.

---

* Egan, J., *vice* Sercombe, J.

## NAKAMOTO, J.

Following a jury trial, defendant was convicted of first-degree robbery with a firearm (Count 1), ORS 164.415, ORS 161.610; unlawful use of a weapon with a firearm (Count 2), ORS 166.220, ORS 161.610; and felon in possession of a firearm (Count 4), ORS 166.270.[1] He appeals, raising four assignments of error. We reject without discussion defendant's third and fourth assignments of error and write only to address his first and second assignments. In his first assignment, defendant contends that the trial court erred in denying his motion to dismiss for lack of a speedy trial, arguing that dismissal was appropriate because the state failed to bring him to trial within a "reasonable period of time" as required by ORS 135.747. In his second assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal (MJOA) on Count 1 because, according to defendant, there was insufficient evidence to prove that he personally used or threatened to use a firearm during the robbery. For the reasons that follow, we conclude that the trial court did not err in denying defendant's motion to dismiss, but that it did err in denying defendant's MJOA. Accordingly, we reverse defendant's conviction on Count 1 and remand for further proceedings; otherwise, we affirm.

We begin with a brief overview of the events leading to defendant's convictions and sentences. We later discuss relevant facts and procedural history in detail as we analyze defendant's assignments of error, which involve differing standards of review.

Defendant's convictions arose out of an armed robbery of a Portland cafe that he and his codefendant, Howard, committed in late October 2008. Howard entered the cafe while defendant remained in the car. Defendant suffered injuries when Howard attempted to elude police after the robbery, and defendant had to be taken to the hospital. Before the police could question defendant, he was released from the hospital. The police did not locate defendant until February 2009, when they discovered that he was in custody

---

[1] Unless noted otherwise, references to statutes in this opinion are to the current versions of the statutes. Although some of the statutes referenced have been amended since defendant committed the underlying offenses, those changes do not affect our analysis.

at the Clark County Jail in Washington. Defendant was subsequently convicted of and sentenced on unrelated charges in Washington and was sent to a Washington state prison. Over the course of several months, the State of Oregon, through the Multnomah County District Attorney's Office, sought defendant's return to Portland under the Interstate Agreement on Detainers (IAD), ORS 135.775, for trial on the charges associated with the robbery. Eventually, the state secured defendant's return to Oregon in July 2010, and, after a jury trial in December 2010, defendant was convicted of the above-mentioned charges. Defendant now appeals.

In defendant's first assignment of error, he argues that the trial court erred in denying his motion to dismiss because the state failed to bring him to trial within a reasonable time as required by ORS 135.747. We review a trial court's conclusions regarding the reasonableness of state-caused delay under the speedy trial statute for errors of law. *State v. Doak*, 235 Or App 351, 356, 231 P3d 1181, *rev den*, 349 Or 171 (2010). With that standard in mind, the facts relevant to defendant's first assignment of error are as follows.

A grand jury in Oregon indicted defendant on January 13, 2009, for charges arising out of the robbery. When the state located defendant at the Clark County Jail in February 2009, it placed a hold on him there, and defendant signed a waiver of extradition on February 25. Thereafter, defendant was convicted in Washington for unrelated crimes and sentenced to serve a prison term. In late September 2009, the state approved a formal detainer and forwarded it to the Multnomah County Sheriff's Office to be sent to the State of Washington Department of Corrections (WDOC). The state waited for defendant to file a request for final disposition under Article III of the IAD, but, after it did not receive a request from defendant, it initiated defendant's return under Article IV of the IAD on December 2, 2009.[2] On January 22, 2010, the Multnomah County Circuit Court

---

[2] Under the IAD, after a party state lodges a detainer against a defendant who is incarcerated in another party state, there are two methods by which the defendant can be returned to the state that lodged the detainer. Under Article III, the defendant can initiate the transfer by filing a request for final disposition. Under Article IV, the state seeking the defendant's return can initiate the process by making a written request for temporary custody. ORS 135.775.

approved the state's request to have defendant returned, and the next day the request was sent to WDOC. On May 24, defendant signed an agreement on detainers waiving extradition and submitting to his return to Oregon for trial. In July, Washington returned defendant to the temporary custody of the Multnomah County District Attorney, and he was arraigned. After a number of continuances granted at the state's request, and one granted at defendant's request, defendant's trial was set for December 6, 2010.

Before trial, defendant moved to dismiss the charges, asserting a violation of his statutory speedy trial right under ORS 135.747. In his motion, he argued that the 22-month delay between his indictment and trial was attributable to the state and that the delay was unreasonable and warranted dismissal. The court conducted a pretrial hearing on the motion, at which it received testimony from Chitwood, a legal assistant for the Multnomah County District Attorney's Office who had been involved in administering defendant's return to Oregon. Chitwood testified that, although her office had placed a hold on defendant in February 2009, that hold had become ineffective once he was convicted and sentenced in Washington. As a result, to have defendant returned to Oregon, the state had to file a formal detainer with WDOC after defendant had been sentenced in Washington. The state did so on September 22, 2009.

Chitwood further testified that in 99 percent of all cases, after a defendant learns that a detainer has been filed against him or her, the defendant will file a speedy-trial motion under the IAD. Chitwood explained that it was standard practice in IAD cases for the district attorney's office to wait for a defendant's response, and it did so in defendant's case after it filed the detainer in September. When defendant did not file a speedy-trial motion, the district attorney requested defendant's return to Oregon under the IAD in December 2009. Chitwood testified that, after that request was approved, the district attorney sent the state's request to WDOC on January 23, 2010.

Chitwood explained that the process to have a defendant returned under the IAD is more "expeditious" and "streamlined" when the defendant files a speedy-trial

motion, and that, in cases in which the state has to initiate the return process, returning a defendant essentially becomes an extradition, which can take longer. Anderson, another employee at the district attorney's office, testified that, once the state filed its request in January 2010, it could not do anything to accelerate the return process until defendant responded to the request, which defendant did on May 24, 2010, by waiving extradition. After hearing the evidence at the pretrial hearing, the trial court denied defendant's motion to dismiss for lack of a speedy trial, concluding that the time period and the state's efforts in bringing defendant to trial were reasonable.

On appeal, defendant argues that the delay attributable to the state in this case is approximately 22 months and that such a delay was not reasonable under ORS 135.747, because the state knew where he was at all times between February 2009 and July 2010 and only sought his return "dilatorily." In response, the state argues that only 16 months of delay can be attributed to the state because, under *State v. Ayers*, 207 Or App 668, 143 P3d 251, *rev den*, 342 Or 253 (2006), defendant waived his ability to invoke ORS 135.747 when he knowingly failed to assert his rights under the IAD in May 2010. The state argues that the 16-month delay, though longer than expected, was nonetheless reasonable. Alternatively, the state argues that, even if the full 22-month delay can be attributed to the state, it was nonetheless reasonable under the circumstances because the state proceeded according to the IAD, which would not have permitted it to secure defendant's return sooner under the circumstances. We need not decide whether the delay attributable to the state is less than 22 months, because we conclude that even a 22-month delay under the circumstances of this case was reasonable.

Oregon's speedy-trial statute provides, "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed." ORS 135.747. "Determining whether a defendant is entitled to dismissal under that statute

requires a two-step analysis: First, we determine the relevant amount of delay by subtracting from the total delay any periods of delay that the defendant requested or consented to; second, we determine whether that delay was reasonable." *State v. Mercier*, 259 Or App 222, 226, 313 P3d 322 (2013).

In this case, a total of 22 months and 23 days elapsed between the time that defendant was indicted and the time that he was tried. We subtract from that period the 17-day delay caused by defendant's November 19, 2010, request for a continuance. Thus, our task is to determine whether the remaining delay of 22 months and six days was a "reasonable period of time" for the state to bring defendant to trial.

The Oregon Supreme Court has explained that, for purposes of Oregon's speedy-trial statute, "a 'reasonable period of time' is 'such length of time as may reasonably be allowed or required having regard to attendant circumstances.'" *State v. Adams*, 339 Or 104, 110, 116 P3d 898 (2005) (quoting *State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994)). Among the "attendant circumstances" that we consider are the circumstances that caused the delay, *i.e.*, the reasons for the delay. *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005). "Even when all of the delays in a case are individually justifiable, there comes a point at which the total length of the delay attributable to the state outweighs the reasons for it," and "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." *State v. Myers*, 225 Or App 666, 676-77, 202 P3d 238, *rev den*, 346 Or 184 (2009). Generally, a delay that "roughly equals the statute of limitations for the crime at issue is too long." *Adams*, 339 Or at 112.

Defendant's argument that the delay in this case was unreasonable is based on his contention that the delay was due to the state's neglect. Defendant contends that the state knew where he was at all pertinent times between February 2009 and July 2010, and that during multiple periods within that timeframe it did nothing for several months. In defendant's view, the state's efforts were not sufficiently expeditious and it took "altogether too long" to

bring defendant to trial, which he argues renders the delay unreasonable. We disagree. Giving regard to the attendant circumstances in this case, including the reasons for the delay, we conclude that the 22-month delay was reasonable.

In this case, the state's efforts to have defendant returned to Oregon for trial were as expeditious as could be expected under the circumstances. Moving chronologically, the record contains a reasonable explanation for almost all of the periods of delay. The only periods that lack justification are the delays between December 2, 2009, and January 23, 2010, and the continuances granted to the state between August 9, 2010, and November 19, 2010. Thus, of the 22 months of delay in this case, only approximately five months were unjustified. The remaining 17 months were reasonable under the attendant circumstances, and, contrary to defendant's assertion, were not the product of the state's neglect. The state sought defendant's return to Oregon under the IAD and was required to work within the confines of that agreement. The delays that resulted were not a product of neglect, but were, on the whole, a product of the procedures required by the IAD. Furthermore, the overall 22-month delay does not approach the three-year limitation period for the felonies in this case. *See* ORS 131.125(7)(a) (providing the limitations periods for felonies). We conclude that the periods of unexplained or unjustified delay in this case are insufficient to warrant reversal. Accordingly, we affirm the trial court's denial of defendant's speedy trial motion.

We now turn to defendant's second assignment of error, in which he argues that the trial court erred in denying his MJOA on the crime of first-degree robbery with a firearm alleged in Count 1. In reviewing the denial of an MJOA, we view the facts and any reasonable inferences in the light most favorable to the state to determine whether a rational factfinder could have found the essential elements of the crime were proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). With that standard of review in mind, the facts relating to defendant's second assignment of error are as follows.

Defendant and Howard drove to the cafe in a car after picking up a backpack containing two guns. Defendant

got into the driver's seat at the cafe. Howard, armed with one of the guns, went inside the cafe by himself to commit the robbery. Defendant stayed in the car. When Howard ran from the cafe to the car, two police officers were already approaching. The officers arrived with guns drawn, and, when one officer directed the men to put their hands up, they complied. Without being asked, defendant then exited the car with his hands up, walked behind the car, and lay on the ground. Howard moved into the driver's seat, put the car in reverse, ran over defendant, and attempted to drive away but stalled the car. Howard was taken into custody and defendant was taken to the hospital. Upon searching the car, the police found the second gun in the backpack.

At trial, after the state's presentation of evidence, defendant moved for a judgment of acquittal for lack of proof on the aggravating firearm element in Count 1, first-degree robbery with a firearm, and Count 2, unlawful use of a weapon with a firearm.[3] Defendant and Howard were charged in a single indictment, and, in Counts 1 and 2, the indictment alleged that both defendant and Howard committed the same crimes. In his motion, defendant argued that the firearm element in both of those counts was "defendant-specific" and therefore did not apply in defendant's case because there was no evidence that defendant used or threatened the use of a firearm during the robbery. The state responded that, as to Count 1, the evidence showed that defendant was in possession of a firearm when he was in the car during the robbery and that that was sufficient to prove the firearm element in that count.

---

[3] Counts 1 and 2 of the indictment alleged that during the commission of those felonies, defendant "used and threatened the use of a firearm." Defendant's MJOA challenged the sufficiency of the evidence as to that aggravating element; defendant did not challenge the sufficiency of the evidence as to any of the other elements of those two counts:

"[DEFENSE COUNSEL]: Okay. Judge, at this point, I am just moving on the subcategory factors. That this is the time and place set for motion for judgment of acquittal and presently the charge includes subcategory factors of the defendant used and threatened the use of a firearm and in the commission of the felony. * * *

"* * * * *

"THE COURT: I don't understand your motion. Are you saying against the entire count or that particular section?

"[DEFENSE COUNSEL]: The subcategory factor."

The trial court denied defendant's motion, and, at the conclusion of the trial, the jury found defendant guilty of the three charges against him. As relevant here, the judgment contained the following description of defendant's conviction and sentence for Count 1:

"It is adjudged that the defendant has been convicted on the following count(s):

## "Count 1: Robbery in the First Degree - Firearm

"Count number 1, Robbery in the First Degree - Firearm, ORS 164.415, a Class A Felony, committed on or about 10/27/2008.

"Conviction is based upon a Jury Verdict of guilty on 12/09/2010.

### "Sentencing Guidelines

"The Crime Severity Classification (CSC) on Count Number 1 is 9 and the Criminal History Classification (CHC) is E.

"This sentence is pursuant to the following special factors:

- "• This is a presumptive sentence.
- "• Measure 11

### "Incarceration

"Defendant is sentenced to the custody of the Oregon Department of Corrections for a period of 90 month(s)."

Nowhere in the judgment or in the sentencing hearing transcript did the court refer to ORS 161.610, which, among other things, prescribes minimum sentences for felonies in which the state has alleged and proved the defendant's use or threatened use of a firearm.

On appeal, defendant challenges only the trial court's denial of his MJOA with respect to Count 1. Citing *State v. Wedge*, 293 Or 598, 604, 652 P2d 773 (1982), and *State v. Pies*, 104 Or App 646, 650, 802 P2d 702 (1990), defendant renews his argument that the state was required to prove that he personally used or threatened to use a firearm in the commission of the robbery and that a rational factfinder could not conclude from the evidence that the state had met that burden.

Although the state argued at trial that the evidence was sufficient to support the firearm element in Count 1, the state concedes on appeal that the trial court erred in denying defendant's MJOA on that count. Nonetheless, the state argues that defendant is not entitled to reversal because, in its view, the error was harmless. Alternatively, the state argues that defendant's second assignment of error is moot because reversal would have no practical effect on the parties. For the reasons stated below, we accept the state's concession that the trial court erred in denying defendant's MJOA on Count 1. However, we disagree with the state that the error was harmless or that the issue is moot. Accordingly, we reverse defendant's conviction on Count 1 and remand for further proceedings.

Pursuant to ORS 161.610(2),

"[t]he use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime as provided in this section. When a crime is so pleaded, the aggravated nature of the crime may be indicated by adding the words 'with a firearm' to the title of the offense. The unaggravated crime shall be considered a lesser included offense."

Under that statute, when the state alleges that a defendant "used or threatened to use a firearm" in the commission of a felony, the alleged use or threatened use of the firearm becomes an element of a new aggravated crime that must be proved beyond a reasonable doubt. *See State v. Flores*, 259 Or App 141, 147, 313 P3d 378 (2013), *rev den*, 354 Or 735 (2014) (explaining that, under ORS 161.610, the use or threatened use of a firearm during the commission of a felony is "expressly designated an element," and, accordingly, when that firearm element is added to an offense, it "creates a new crime, the aggravated crime, which is separate from the 'unaggravated crime'" (emphasis omitted)).

In *Wedge*, the Supreme Court held that, absent a finding that the defendant personally used or threatened to use a firearm, a court is without authority to sentence the defendant to a gun-minimum sentence under ORS 161.610.

*Wedge*, 293 Or at 604. In *Pies*, we explained that a finding is sufficient to support the imposition of a gun-minimum sentence "when the factfinder returns a verdict of guilty on a charge in which one of the elements is the 'use or threatened use of a firearm' or when the factfinder makes a separate finding on that issue." *Id.* at 650. However, we noted that "in either case, the finding must establish that the defendant *personally* used or threatened to use a firearm." *Id.* at 650-51 (emphasis added). In *Pies*, we held that the defendant, who was armed and concealed in a closet while another robber confronted the victim, had not personally used or threatened to use a firearm. *Id.* at 651.

Thus, under the principles articulated in *Wedge* and *Pies*, when the state has alleged that a defendant "used or threatened to use a firearm" during the commission of a felony, proof of that firearm element requires evidence that the defendant personally used or threatened to use a firearm. Evidence establishing that the defendant possessed a firearm and had the intent to use it is insufficient to meet that burden. *See Pies*, 140 Or App at 651 (explaining that the trial court improperly imposed a gun-minimum sentence under ORS 161.610, because, at most "the evidence establishe[d] *** that [the] defendant personally possessed a firearm with the intent to use it during the burglary and robbery").

Here, even when viewing the evidence in a light most favorable to the state, a rational factfinder could not find that the state proved, beyond a reasonable doubt, that defendant personally used or threatened to use a firearm during the commission of the robbery. Defendant waited in the car while Howard entered the cafe to commit the robbery. Accordingly, we accept the state's concession and hold that the trial court erred in denying defendant's MJOA on Count 1.

Having decided that the trial court erred, the remaining issue we address is whether that error was harmless. Both statutory and constitutional authorities govern the harmless error doctrine. *State v. Link*, 346 Or 187, 197, 208 P3d 936 (2009). For criminal appeals, the statutory standard for harmless error is ORS 138.230, which provides

that appellate courts are to "give judgment, without regard
\*\*\* to technical errors, defects or exceptions which do not
affect the substantial rights of the parties." Under the con-
stitutional standard, we consider whether "the judgment
of the court appealed from was such as should have been
rendered in the case," and if it was, we are to affirm such
judgment "notwithstanding any error committed during the
trial." Or Const, Art VII (Amended), § 3; *see State v. Davis*,
336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional
test for affirmance despite error consists of a single inquiry:
Is there little likelihood that the particular error affected
the verdict?").

In support of its argument that the error in this case
is harmless, the state contends that a conviction for a fire-
arm offense under ORS 161.610 has only two possible legal
consequences: "(1) to subject the defendant to an enhanced
sentence for the enhanced conviction; and (2) to subject the
defendant to enhanced sentences for future firearm-related
convictions."[4] Because defendant was not sentenced under
ORS 161.610, the state argues that he is not subject to either
of those consequences, and, as a result, it argues that defen-
dant was not prejudiced by the court's denial of his MJOA.

---

[4] In regard to sentencing, ORS 161.610 provides, in relevant part:

"(3) \*\*\* if a defendant is convicted of a felony having as an element the
defendant's use or threatened use of a firearm during the commission of the
crime, the court shall impose at least the minimum term of imprisonment as
provided in subsection (4) of this section. \*\*\*

"(4) The minimum terms of imprisonment for felonies having as an ele-
ment the defendant's use or threatened use of a firearm in the commission of
the crime shall be as follows:

"(a) Except as provided in subsection (5) of this section, upon the first
conviction for such felony, five years \*\*\*.

"(b) Upon conviction for such felony committed after punishment pur-
suant to paragraph (a) of this subsection or subsection (5) of this section, 10
years \*\*\*.

"\*\*\*\*\*

"(5) If it is the first time that the defendant is subject to punishment
under this section, rather than impose the sentence otherwise required by
subsection (4)(a) of this section, the court may:

"\*\*\*\*\*

"(b) For felonies committed on or after November 1, 1989, impose a
lesser sentence in accordance with the rules of the Oregon Criminal Justice
Commission."

The state also argues that, even if ORS 161.610 "would somehow apply to defendant's potential future firearm convictions, that applicability would not have been affected" by the trial court granting defendant's MJOA on Count 1, because defendant would be subject to the same future consequence based on his firearm conviction in Count 2, which he does not challenge on appeal. Although defendant agrees that he did not receive a gun-minimum sentence pursuant to ORS 161.610, he notes the salient fact that he nevertheless was convicted pursuant to that statute.

When considering whether an error is harmless, we must be mindful that the term "harmless error" is merely "a shorthand reference to a legal standard" and is not "an entirely accurate descriptor of the legal analysis" that is required. *Davis*, 336 Or at 27. Therefore, it is insufficient to say, as the state does in this case, that defendant was not harmed by the court's denial of his MJOA because, practically speaking, a reversal would not affect the sentence that defendant received or any sentence that he may receive in the future. Rather, the question is whether the error affected a substantial right of the defendant or whether the error affected the verdict. We conclude that in this case the error is not harmless under either of those standards. That conclusion is informed by the Supreme Court's decision in *Link*, which considered whether the erroneous denial of an MJOA is harmless in the context of merged convictions.

The defendant in *Link*, who had been convicted of five counts of aggravated murder (Counts 1 through 5), argued in this court that the trial court erred in denying his MJOA on Counts 1 through 3 and erred in failing to merge the aggravated murder counts. *State v. Link*, 214 Or App 100, 110-11, 162 P3d 1038 (2007). We agreed with the defendant that, under *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), the trial court should have merged the aggravated murder counts and entered only a single conviction for aggravated murder. *Link*, 214 Or App at 110. We then concluded that we did not need to decide whether the trial court erred in denying the defendant's MJOA on Counts 1 through 3 because any error would be harmless. *Id.* at 111. We based that conclusion on the fact that the defendant did not challenge his convictions on Counts 4 and 5. We reasoned that

"even if [the] defendant [was] correct that the court erred in not acquitting him on Counts 1 through 3, he would still stand convicted on Counts 4 and 5" and, "[b]ecause all of the counts merge into a single conviction, resulting in a single sentence, acquittal on Counts 1 through 3 would not affect a substantial right of [the] defendant." *Id.*

The Supreme Court allowed review of our decision and reversed on the question of harmless error, concluding that the erroneous denial of the defendant's MJOA was not harmless under either the statutory or the constitutional standard. *Link*, 346 Or at 202. With regard to the statutory standard, the court explained that, when the state fails to prove that a defendant committed a crime as charged, the defendant has a substantial right to be acquitted of that crime:

> "When the state charges a defendant with illegal acts, the public is entitled to measure the truth of those charges not by the defendant's protests of innocence, but by the final judgment of the court. If the state does not produce facts necessary to sustain a verdict of guilty, then the defendant is entitled to a judgment of acquittal and to have the public record of his case reflect that judgment."

*Id.* at 199. The court further explained that, under ORS 137.071,[5] criminal judgments must "specify clearly the court's determination for each charge in the information, indictment or complaint," thus recognizing "a defendant's interest in having the criminal record correctly reflect the court's resolution of each charge that the state makes." *Link*, 346 Or at 200 (internal quotation marks omitted). The court noted that, as a result, if the trial court erred in denying the defendant's MJOA, then the judgment entered against him did not reflect the correct determination of the charges in the indictment. *Id.* The court further explained that merger of the defendant's convictions would not render the error harmless:

> "If we were to adopt the position of the Court of Appeals, the guilty verdicts entered against [the] defendant on Counts 1

---

[5] In *Link*, the court cites to ORS 137.071(7) (1999), which was last amended in 2003 and is now found at ORS 137.071(2)(f). Or Laws 2003, ch 576, § 162. The 2003 amendments did not affect the requirement relied on by the Supreme Court.

through 3 would stand, not because the state proved those charges, but because the state proved that [the] defendant was guilty of other, separate charges—those set forth in Counts 4 and 5. Merger of charges based on insufficient evidence would bar [the] defendant from obtaining acquittal on those charges. That inverts the proper analytical sequence. The question whether a person is guilty as charged has an independent significance that cannot be foreclosed by later merger. Merger presumes the validity of the convictions being merged; acquittals do not merge with convictions."

*Id.* at 202. The court also concluded that the error was not harmless under the constitutional standard as articulated in *Davis*. The court explained that, if the trial court erred in denying the defendant's MJOA on Counts 1 through 3, then "the trial court should not have entered a verdict of guilty" on those counts, and, therefore, "[b]y definition, the court's error affected the verdict." *Link*, 346 Or at 203.

*Link* forecloses the state's "harmless error" argument in this case. Here, the state concedes, and we agree, that the state failed to prove that defendant committed the crime of first-degree robbery with a firearm and that, as a result, he was entitled to a judgment of acquittal. Thus, under the statutory standard in ORS 138.230, the error in this case was not harmless, because it denied defendant his right to an acquittal on that charge and his right to have the judgment reflect that acquittal. For the same reason, the error is not harmless under the constitutional standard because the judgment entered was not as it should have been.

We likewise are not persuaded by the state's argument that defendant's second assignment of error is moot. "Determining mootness is one part of the broader question of whether a justiciable controversy exists." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). If a case lacks a justiciable controversy, we must dismiss it because "appellate courts may not decide abstract, hypothetical or contingent questions." *Id.* (internal quotation marks omitted). Two determinations guide our analysis of whether a justiciable controversy exists: First, are the interests of the parties adverse? And second, will the court's decision have some practical effect on the rights of the parties? *Id.* According

to the state, reversing defendant's conviction on the firearm enhancement on Count 1 would have no practical effect on the rights of the parties, because reversal would not affect the Measure 11 sentence that defendant actually received nor the applicability of ORS 161.610 to any future firearm convictions.

For the same reasons that the error was not harmless, correction of the error is not moot. Although defendant's sentence on Count 1 may not be affected by a reversal, a reversal would nonetheless have a practical effect: defendant's judgment of conviction would be modified to correctly reflect acquittal on the aggravated felony of first-degree robbery with a firearm. *See Link,* 346 Or at 203 (concluding that the case was not moot because, if the defendant were successful in his claim that the trial court erred in denying his MJOA on three out of five counts of aggravated murder, that ruling would have a "practical effect" on his rights because his judgment of conviction would be modified to reflect the acquittals). Therefore, contrary to the state's contention, defendant's second assignment of error is not moot.

In sum, the trial court erred when it denied defendant's MJOA on the aggravated firearm element in Count 1, and that error was not harmless. Accordingly, we reverse defendant's conviction for first-degree robbery with a firearm on Count 1. However, because defendant did not challenge the sufficiency of the evidence for the lesser-included offense of first-degree robbery in Count 1, *see* 261 Or App 448 n 3, we remand to the trial court for entry of a judgment of conviction for that lesser-included offense. *See* ORS 161.610(2) ("The unaggravated crime shall be considered a lesser included offense.").

Conviction for first-degree robbery with a firearm (Count 1) reversed and remanded with instructions to enter a conviction for first-degree robbery and for resentencing; otherwise affirmed.