Argued and submitted November 1, 2006, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 11, 2007
Petition for Writ of Certiorari granted March 17, 2008 (2008 WL 112170)

# STATE OF OREGON,
## *Respondent on Review,*

*v.*

# THOMAS EUGENE ICE,
## *Petitioner on Review.*

# (CC 99C49779; CA A111668; SC S52248)

170 P3d 1049

Ernest G. Lannet, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, Kistler, and Walters, Justices.[**]

GILLETTE, J.

---

[**] Carson, J., retired December 31, 2006, and did participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.

Kistler, J., dissented and filed an opinion, in which Balmer, J., joined.

## GILLETTE, J.

The question in this criminal case is whether the state or federal constitution requires that a jury, rather than a judge, find the facts that Oregon law requires be present before a judge can impose consecutive sentences. Over defendant's objection, the trial court in the present case imposed consecutive sentences based on its own factual findings. The Court of Appeals affirmed the trial court's judgment without opinion. *State v. Ice*, 178 Or App 415, 39 P3d 291 (2001). We allowed defendant's petition for review and now reverse the decision of the Court of Appeals and the judgment of the trial court.

Defendant managed an apartment complex where the 11-year-old victim, her mother, and younger brother lived. On two occasions, defendant entered into the family's apartment at night. On each occasion, defendant went into the victim's bedroom and touched her breasts and then her vagina.

Based on those acts, a grand jury indicted defendant for committing six crimes. The indictment alleged that defendant twice committed first-degree burglary by entering the victim's apartment with the intent to commit sexual abuse. The indictment also alleged that, during each burglary, defendant committed two acts of first-degree sexual abuse; specifically, the indictment alleged that, on each occasion, defendant touched the victim's breasts and then her vagina. Defendant pleaded not guilty. The case was tried to a jury. After considering the evidence, the jury convicted defendant of all six charges.

Before the sentencing hearing, the parties submitted sentencing memoranda. Regarding the length of the sentences, the state recommended that the trial court impose enhanced or upward departure sentences on the two burglary convictions and also on the two sexual abuse convictions based on touching the victim's vagina. It did not argue that the court should impose departure sentences on the two sexual abuse convictions based on touching the victim's breasts. With respect to the separate question of whether the sentences should run concurrently or consecutively, the state

contended that there were two separate criminal episodes based on the two burglaries and that the sentences arising out of each of those criminal episodes should run consecutively to each other. The state also argued that, within each of the two criminal episodes, the sentence for sexual abuse based on touching the victim's vagina should run consecutively to the sentence for burglary. It recommended, however, that the sentences for sexual abuse based on touching the victim's breasts should run concurrently with the sentences for sexual abuse based on touching the victim's vagina.

In his sentencing memorandum, defendant did not address whether the court should impose departure sentences. Regarding consecutive sentences, defendant agreed that there were two criminal episodes and that ORS 137.123(2) would permit the trial court to impose the sentences arising out of the second episode consecutively to the sentences arising out of the first episode. Defendant noted, however (and the state agreed), that the trial court could impose consecutive sentences *within* each episode only if it made certain factual findings set out in ORS 137.123(5). Defendant did not argue, in his sentencing memorandum, that either the state or federal constitution required a jury to make those findings. Defendant did argue, however, that the two sexual abuse convictions that occurred within each criminal episode should merge and that, to the extent that there might be a factual basis for finding that merger was not appropriate, the state constitution required a jury to make that factual finding.

After defendant filed his sentencing memorandum but before the sentencing hearing, the United States Supreme Court issued its decision in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). Defendant then filed a supplemental memorandum bringing that decision to the trial court's attention. The memorandum recited the holding in that case and then stated, "Accordingly, it is the province of the jury to determine which facts constitute a crime, and the jury must also consider any factors which may result in a sentence more severe than contemplated by statute." Defendant's memorandum did not

purport to explain precisely how *Apprendi* applied to the various sentencing decisions before the trial court. More specifically, defendant did not argue that *Apprendi* applied to departure sentences; that is, he did not argue that, as the United States Supreme Court held four years later in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the rule in *Apprendi* applied not only to sentences that exceeded the statutory maximum, but also to departure sentences that exceeded guidelines sentences but stayed within the statutory maximum.

At the sentencing hearing, the trial court noted that it had received extensive sentencing memoranda from the parties and asked whether either had anything to add. Defendant clarified one point. He argued that, contrary to his statement in the sentencing memorandum, the question whether the two convictions for burglary (and the attendant sexual abuse convictions) arose out of separate criminal episodes turned on a factual finding that, under the state constitution, the jury had to make.

Having considered the parties' arguments, the trial court rejected defendant's arguments. The court then followed the state's recommendations. It imposed upward departure sentences on the two burglary convictions and the two sexual abuse convictions based on touching the victim's vagina. It did not impose upward departure sentences on the remaining two sexual abuse convictions. It found that the first burglary charge and the two related sexual abuse charges occurred within a single criminal episode, which ordinarily would require that the sentences on those convictions be concurrent unless the court made certain factual findings. *See* ORS 137.123(5) (stating findings necessary to impose consecutive sentences for convictions arising out of a continuous and uninterrupted course of conduct). On that point, the court reasoned:

> "[The c]ourt can impose consecutive sentences [for offenses that occur within a continuous and uninterrupted course of conduct] if the court finds [under ORS 137.123(5)] that the criminal offense for which consecutive sentence was contemplated was not merely an incidental violation of a separate statutory provision. I do make that finding in

this case, that it was an indication of your willingness to commit more than one criminal offense.

"In addition, I find that in committing sexual abuse in the first degree that you caused or created a risk of causing greater, qualitatively different loss, injury or harm to the victim than you did in count 1. So, as I said, your sentence on count 2 [sexual abuse for touching the victim's vagina] will be consecutive to the sentence [o]n count 1 [burglary]."

The court ordered that the sentence on the remaining sexual abuse conviction run concurrently with the sentence on the sexual abuse conviction for touching the victim's vagina.

The court then found that the second burglary was a "second separate incident" and ordered that the sentence on that conviction run consecutively to the other sentences. Regarding the sexual abuse convictions for touching the victim's vagina and breasts during that second burglary, the court, applying the same reasoning that it had used in connection with the first burglary, ordered that the sentence on the conviction for sexual abuse based on touching the victim's vagina run consecutively to the sentence for the second burglary, but that the conviction for sexual abuse based on touching the victim's breasts run concurrently with the other sentences.

■     Defendant appealed. Among other things, he argued that the trial court violated his state and federal constitutional rights both when it imposed departure sentences and when it ordered that the sentences for four of his six convictions run consecutively rather than concurrently. He further contended that, even if he had failed to preserve those issues, the Court of Appeals should reach them under the plain error doctrine. As noted, the Court of Appeals affirmed the trial court's judgment without opinion, and we allowed defendant's petition for review to consider whether either the state or federal constitution requires that a jury rather than a judge find the facts necessary to impose consecutive sentences.

On review, defendant begins by challenging the upward departure sentences that the trial court imposed. Relying on *Apprendi* and *Blakely*, he argues that a jury rather than a judge should have found the facts necessary to

impose those sentences. Defendant failed to preserve that objection. He never objected on any ground, either in his sentencing memorandum or at the sentencing hearing, to imposing an upward departure sentence on any of his convictions.

To be sure, defendant did argue in his sentencing memorandum that the state constitution precluded the trial court from refusing to merge the two sexual abuse convictions unless it did so on facts that a jury rather than a judge found, and he extended that state constitutional argument at the sentencing hearing to consecutive sentences. But defendant never suggested that the same constitutional objection also applied to departure sentences. Rather, in selectively arguing that only certain of the sentencing decisions before the trial court ran afoul of constitutional principles, defendant failed to preserve any claim that the state's request to impose other forms of sentencing—in this case, departure sentences—also presented the same constitutional issue.[1] It thus fell to the Court of Appeals to consider this part of defendant's argument—if it considered it at all—under the doctrine of "error apparent on the face of the record." The Court of Appeals did not choose to do that, and we cannot say that the Court of Appeals' choice was legally impermissible. We find no error respecting the imposition of departure sentences.

Defendant also argues that, under both the state and federal constitutions, he had a right to have the jury decide the facts on which the court based its decision to impose consecutive sentences. Before turning to those arguments, we first describe ORS 137.123, which defines when courts may impose consecutive sentences. *See* ORS

---

[1] Defendant did notify the trial court of the United States Supreme Court's opinion in *Apprendi*; however, he did not argue that the holding in *Apprendi* applied to departure sentences—a proposition that was not evident from the decision in *Apprendi* itself and, indeed, was not fully clarified until the Supreme Court explained it four years later in *Blakely*. *Compare State v. Dilts*, 336 Or 158, 82 P3d 593 (2003), *vac'd and rem'd*, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004) (holding that *Apprendi* did not apply to departure sentences), *with State v. Dilts*, 337 Or 645, 103 P3d 95 (2004) (holding, on remand in light of *Blakely*, that *Apprendi* applies to departure sentences). Defendant's citation to *Apprendi* was not enough, at that time, to put the trial court on notice that, in defendant's view, the rule in *Apprendi* applied to departure sentences. That is especially true when defendant had raised no objection to imposing departure sentences either in his sentencing memorandum or at the sentencing hearing.

137.123(1) (providing that courts may impose consecutive sentences "only in accordance with the provisions of this section"). ORS 137.123 permits consecutive sentences in two different situations. First, ORS 137.123(2) provides that, when a court sentences a defendant for offenses that "do not arise from the same continuous and uninterrupted course of conduct" or when a court sentences a defendant who already is serving a previously imposed sentence, "the court may impose a sentence concurrent with or consecutive to the other sentence or sentences." Second, ORS 137.123(4) provides that, when "a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court" finds one of two facts. If the court finds either:

> "(a)   That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or
>
> "(b)   [that t]he criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct,"

then the trial court "has discretion to impose consecutive terms of imprisonment." ORS 137.123(5).

The trial court viewed this as a case involving both statutory bases for imposing consecutive sentences: First, the trial court found that the convictions for the two burglaries (and the attendant sexual abuse convictions) arose out of "separate incident[s]" and, thus, did not "arise from the same continuous and uninterrupted course of conduct." *See* ORS 137.123(2) (stating that criterion). Accordingly, the trial court concluded that it had discretion under ORS 137.123(2) to order that the sentences arising out of the second burglary run consecutively to the sentences arising out of the first burglary. Second, the trial court implicitly found that the three

offenses (the burglary and the two instances of sexual abuse) that occurred during each burglary arose out of a "continuous and uninterrupted course of conduct."[2] *See* ORS 137.123(4) (stating that limitation). As to the latter criterion, and before the trial court could impose consecutive sentences on the burglary and sexual abuse convictions, it had to find either that the convictions for burglary and sexual abuse reflected a "willingness to commit more than one criminal offense" or that the two offenses "caused * * * greater or qualitatively different loss, injury or harm to the victim." *See* ORS 137.123(5)(a) and (b) (stating those criteria for imposing consecutive sentences when multiple convictions arise out of a course of continuous and uninterrupted conduct). As noted, the trial court made both findings consistent with the criteria in *both* ORS 137.123(5)(a) and (b) before deciding that, within each criminal episode, the sentence for one count of sexual abuse would run consecutively to the sentence for burglary.

With that background in mind, we turn first to defendant's arguments under Article I, section 11, of the Oregon Constitution. That section provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[.]" Defendant urges us to adopt an interpretation of Article I, section 11, that parallels the United States Supreme Court's interpretation of the Sixth Amendment right to a jury trial in *Apprendi* and *Blakely*. Defendant contends that, under this court's decisions, the state constitutional right to a jury trial "extends to any fact in the commission of the crime that determines the maximum punishment to which the defendant is subject." (Emphasis omitted.)

■ This court interprets the provisions of Oregon's constitution independently of their federal analogues. *See State v. Cook*, 340 Or 530, 540, 135 P3d 260 (2006) (declining to abandon this court's interpretation of Oregon's Confrontation Clause because federal courts had announced a new analysis of the United States Confrontation Clause). As this

---

[2] The trial court did not make that finding explicitly. It did find, however, that the two sets of three offenses occurred during two separate criminal episodes, and it relied on ORS 137.123(5) to impose consecutive sentences.

court explained in *State v. Caraher*, 293 Or 741, 749, 653 P2d 942 (1982), "[w]hen this court gives Oregon law an interpretation corresponding to a federal opinion, our decision remains the Oregon law even when federal doctrine later changes." In a series of three cases, this court announced an independent interpretation of Article I, section 11, before the United States Supreme Court announced its decisions in *Apprendi* and *Blakely*. We begin with those decisions.

In determining whether a criminal defendant has a right to a jury trial on a sentencing factor under Article I, section 11, this court never has suggested that the existence of the right turns on whether the factor extends the length of a defendant's sentence beyond the statutory maximum, as the federal courts have. *Compare State v. Wedge*, 293 Or 598, 608, 652 P2d 773 (1982) (holding that defendant's state jury trial right applied to a five-year mandatory minimum sentence even though the trial court had imposed a 20-year sentence on the underlying crime), *with Harris v. United States*, 536 US 545, 556-68, 122 S Ct 2406, 153 L Ed 2d 524 (2002) (plurality opinion) (reasoning that the rule in *Apprendi* did not apply to a mandatory minimum sentence that did not extend the defendant's sentence beyond the statutory maximum). Rather, this court has suggested that the right to jury trial under Article I, section 11, turns on whether the fact at issue is an "element of," or "goes to" the criminal act for which the defendant is to be punished. According to the court's usual analysis, *other* facts that might enhance a defendant's sentence, including those that "characterize the defendant," are properly decided by the sentencing court.

Thus, in *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), this court considered the constitutionality of a death penalty scheme that required trial courts to impose the death penalty on defendants found guilty of murder, if the *court* found either that the defendant had acted deliberately or that there was a probability that the defendant would commit criminal acts of violence that would constitute a threat to society. The *Quinn* court concluded that, because the fact of deliberateness was one of the facts that constituted the crime for which the defendant was to be punished, the scheme violated the right to jury trial guaranteed by Article I, section 11. The court noted that it had approved of *some* schemes

that used post-trial judicial findings to impose a greater sentence—specifically, habitual criminal and sexually dangerous offender statutes—but it explained that those schemes were different from the death penalty scheme because they pertained to a mere status and not to a "part of an act declared by the legislature to be criminal" (as in the death penalty statute). *Quinn*, 290 Or at 406. The distinction could be explained, according to the *Quinn* court, in terms of a "simple principle"—that "facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing court." *Id.* at 405.

Quoting from *State v. Hoffman*, 236 Or 98, 385 P2d 741 (1963), the *Quinn* court indicated that the distinction arises out of the wording of Article I, section 11:

> " 'In our opinion, the words "criminal prosecution," as set forth in Article I, section 11 of our constitution, refer to *establishing before a jury acts declared to be criminal by legislative action.*' "

*Id.* at 405-06 (quoting *Hoffman*, 236 Or at 107) (emphasis added). In other words, according to *Quinn*, Article I, section 11, has no effect on factual determinations that the legislature has denominated as sentencing enhancement, but that are not part of the jury's determination of guilt or innocence, no matter how the legislature has chosen to define the crime at issue.[3]

Later, in *Wedge*, this court appeared to acknowledge that the legislative label does not always resolve the issue. The statute at issue in *Wedge* provided a five-year mandatory minimum sentence when, prior to sentencing on any felony conviction, a trial court found that the defendant had used or

---

[3] It may be less than obvious to present day courts and practitioners that a "criminal prosecution" embraces guilt determinations but not sentencing matters, or that that phrase applies only to proceedings designated as criminal by the legislature. Arguably, the *Quinn* court's interpretation of the words of Article I, section 11, to that effect is incorrect. However, defendant here has made no such argument, but instead has framed his argument entirely in terms of the interpretation currently set out in our cases. As such, we have no occasion to consider the possibility. *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 53-54, 11 P3d 228 (2000) (parties wishing to have this court alter existing state constitutional interpretation should do so by presenting principled argument showing how present interpretation was wrong when made or should be altered now); *see also State v. Ciancanelli*, 339 Or 282, 287-319, 121 P3d 613 (2005) (illustrating process).

threatened to use a firearm during the crime. The court reiterated the general distinction made in *Quinn* between facts that pertain to the defendant's character and those that are elements of the crime for which the defendant is to be punished and opined that a defendant's use of a firearm in the course of a crime is "closer to an element of the crime than to a characterization of the defendant." 293 Or at 607. The court went on to explain that, although the statute treated firearm use as a mere sentencing factor, when applied in the context of a robbery conviction, it "in effect * * * create[d] a new crime" of first-degree robbery using a firearm. *Id.* at 608. In other words, the court indicated that it would look beyond the legislative label attached to an enhancement factor to determine whether, in reality, it was an element of the crime for which the defendant was to be punished (and, thus, a fact that must be determined by the jury).

In the last of this court's Article I, section 11, cases, *State v. Hart*, 299 Or 128, 699 P2d 1113 (1985), the question was whether, when a defendant convicted of second-degree assault was ordered to pay restitution, the amount of the restitution award was a fact that the state had to prove to the jury. Although that fact—the amount of the victim's loss—clearly was not a fact that "characterize[d] the defendant," *see Quinn*, 290 Or at 405 (stating that test), the court did not hold that it automatically followed that it was a fact that Article I, section 11, required a jury to find. Rather, the court focused on whether the amount of damages was an "element" of the charged crime. *Hart*, 299 Or at 136-37. In analyzing that issue, the court noted that the defendant had been convicted of assault in the second degree, "which is defined as '[i]ntentionally or knowingly caus[ing] serious physical injury to another.'" *Id.* at 137 (quoting ORS 163.175(1)(a)). The court reasoned:

> "The seriousness of the injury inflicted by the defendant is an element of the crime of assault, but the monetary amount of the medical and other out-of-pocket expenses associated with the injury is not. The monetary cost of the injury is neither an element of the crime nor 'an act in the commission of the crime.' * * * *Therefore, while the amount of the restitution order might be termed an element of sentencing, it is not an element of the crime of assault.*"

*Id.* (emphasis added). The court accordingly held that Article I, section 11, did not require that the jury find the amount of the victim's loss. *Id.*

Notably, the *Hart* court did not concern itself with whether the restitution order increased the defendant's punishment. And, although the order clearly did not pertain to the defendant's character or status, the court seemed to have little trouble in concluding that it was an "element of sentencing" and not an element of the defendant's crime. Presumably it did so based on traditional notions of the proper role of judges in determining a defendant's sentence.

■    *Hart, Wedge,* and *Quinn* generally may be said to stand for the proposition that questions that arise under Article I, section 11, are to be resolved primarily in terms of whether the fact that authorizes an enhanced punishment is an "element" of the crime for which the defendant is to be punished, regardless of how it has been denominated by the legislature. Inherent in that approach is the idea that *some* facts that may lead to enhanced punishment—for example, those that pertain to the defendant's character or status—are traditionally and properly for the sentencing court. Unfortunately, beyond these two categories of facts that *Quinn* and *Wedge* specifically exclude, the cases do not offer a clear rule for determining whether a fact, the existence of which has been identified by the legislature as a sentencing factor, is an element of the crime. Although the answer to that question may be obvious in most cases, there will be some cases in which courts will simply be making their best call, based on perceptions of the traditional roles of judge and jury in determining a criminal defendant's punishment.

■    We turn from the foregoing general description of our precedents to an attempt to apply their collective analysis to the findings that the trial court made in the present case in support of its various decisions to impose consecutive sentences. As noted, the court found three facts in imposing consecutive sentences. First, it imposed consecutive sentences on the two burglary convictions based on a finding that the two burglaries were "separate incidents" and, thus, did not "arise from the same continuous and uninterrupted course of conduct." Second, it announced, as one reason for imposing

consecutive sentences for the burglary and sexual assault convictions, that each sexual assault was "not merely incidental" to the commission of the burglaries but instead "was an indication of [defendant's] willingness to commit more than one criminal offense." Finally, the court stated an alternative finding to support its imposition of consecutive sentences on the burglary and sexual assault convictions, *viz.*, that each sexual assault "caused or created a risk of causing [a] greater, qualitatively different loss, injury, or harm to the victim" than the underlying burglary did.

None of those three findings appears to represent an "element" of any offense for which defendant is to be punished. Our reasoning with respect to the second finding—that each sexual assault was "not merely incidental" to the commission of the burglaries but indicated defendant's "willingness to commit more than one criminal offense"—is, perhaps, easiest to explain: At least the latter part of that finding seems to be quintessentially about defendant's character, and both *Quinn* and *Wedge* state that such findings are properly made by the sentencing court.

But our reasoning with respect to the first and third findings also applies to the second one. All three findings involve an assessment of the relationship between two crimes of which defendant is guilty—whether to determine that each crime is a separate incident, was not incidental to the other crime, or caused a different loss than did the other crime. Because all three findings involve a comparison between *two* crimes for which defendant is to be punished, none of the three can reasonably be deemed to constitute an *element* of either crime. Moreover, that sort of comparison between a defendant's crimes is precisely the sort of determination that sentencing courts traditionally have made and used to support their decisions to impose consecutive sentences. Nothing in *Quinn, Wedge,* or *Hart* suggests that sentencing courts are precluded from continuing in that tradition (and, in fact, they appear to be striving to maintain it).

We conclude that none of the three findings at issue went to an "element" of any crime for which defendant was to be punished. As such, the fact that the trial court made the

findings did not violate defendant's right to a jury trial under Article I, section 11, of the Oregon Constitution.

We turn to defendant's arguments under the Sixth Amendment to the United States Constitution. Notably, the Supreme Court of the United States has rejected, for purposes of the Sixth Amendment, the analytical line that this court has taken in the past (and that we have described above) with respect to Article I, section 11. That is, the Court has indicated that it is wrong to allow the scope of the right to a jury trial to depend on the label "element" or "sentencing factor"—that the legislature chooses to assign to a factual issue. *Blakely*, 542 US at 306. It also has criticized judicial attempts to look beneath the legislative labels in this area, as this court did in *Wedge*, on the ground that such analytical efforts are inevitably subjective and manipulable. *Id.* at 307-08. Ultimately, the Court rejected the idea that the Framers of the Sixth Amendment would have thus

> "left definition of the scope of jury power up to a judges' intuitive sense of how far is *too far*. We think that claim [that the Sixth Amendment should be deemed to permit courts, rather than juries, to decide facts that *courts* deem to be mere 'sentencing factors'] not plausible at all, because the very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust government to mark out the role of the jury."

*Id.* at 308 (emphasis in original).

■      Thus, in a series of cases, beginning with *Jones v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999) and ending, for the moment, with *Cunningham v. California*, 549 US ___ , 127 S Ct 856, 166 L Ed 2d 856 (2007), the United States Supreme Court has opted for a "bright line" rule when confronted with the sort of claims that we now are considering under the Sixth Amendment in this case. That rule is most succinctly stated in *Apprendi:* "Other than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 US at 490 (emphasis added). In *Apprendi*, the Court applied that rule in concluding that a defendant's Sixth Amendment rights had been violated when

a trial court imposed a prison term that exceeded the statutory maximum for the crime for which the jury had convicted the defendant, based on the trial court's *own* determination that defendant had committed the crime for racially motivated reasons. *Id.* at 491. Similarly, in *Blakely,* the Court employed that rule when it held that the Sixth Amendment was violated when a trial court imposed a sentence that exceeded the statutory maximum for the crime—second-degree kidnapping—that the jury had convicted him of, based on the trial court's own determination that the defendant had acted with "deliberate cruelty." *Blakely*, 542 US at 301-14.

In *United States v. Booker*, 543 US 220, 236, 125 S Ct 738, 160 L Ed 2d 621 (2005), the Court explained its rationale for adopting the foregoing rule. First, it noted that, with the advent of determinate sentencing schemes, it had been forced to consider "the significance of facts selected by legislatures that * * * increased the range of sentences possible for the underlying crimes." Under sentencing schemes that permitted trial judges to impose a sentence that exceeded the statutory maximum for an offense, based on finding certain sentencing factors, "[i]t became the judge, not the jury, who determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance" of the evidence. *Id.* The Court then explained that it had issued its holdings in *Apprendi* and *Blakely* in response to this "new sentencing practice." *Id.* at 237. The Court reasoned:

"As it thus became clear that sentencing was no longer taking place in the tradition [of judicial discretion in sentencing] that Justice Breyer invokes [in his dissenting opinion], the Court was faced with the issue of preserving an ancient guarantee [to trial by jury] under a new set of circumstances. The new sentencing practice forced the Court to address the question how the right of jury trial could be preserved in a meaningful way guaranteeing that the jury would still stand between the individual and the power of the government under the new sentencing regime. *And it is the new circumstances, not a tradition or practice that the new circumstances have superseded, that have led [the Court] to the answer first considered in* Jones *and developed*

*in* Apprendi *and subsequent cases culminating with this one.*"

*Id.* (emphasis added). We believe that the foregoing statement from *Booker* makes it inescapably clear that the rule in *Apprendi* and *Blakely* is not directed at the traditional discretion of judges to select a sentence *within a range that the legislature has selected and the jury's verdict determines,* but at sentencing schemes that permit or require judges to impose sentences that are *longer* than sentences that a jury's verdict alone would authorize.

Obviously, in the context of that concern, it does not matter that a factual determination is of a type that traditionally has been made by judges in the exercise of their sentencing discretion. The concern is with facts that increase a defendant's sentence beyond the prescribed maximum for the crime that *the jury* determined that the defendant committed. Under *Apprendi, Blakely*, and their progeny, those facts must themselves be decided by a jury.

**6.** Does the *Apprendi* rule apply to the present circumstance, *i.e.*, to factual findings that do not increase the sentence for any individual count but that authorize imposition of consecutive sentences? The state contends that it does not. The state notes that, as it is stated and applied in *Apprendi, Blakely*, and *Booker*, the rule is predicated on an increase beyond the prescribed statutory minimum "for a crime." It then argues:

> "The relevant statutory maximum for *Apprendi* purposes is the maximum sentence for each separate, individual offense. The consecutive-sentencing determination is a quintessential sentencing determination that *transcends* each offense and only becomes relevant when a jury has already convicted a defendant beyond a reasonable doubt of two or more offenses. When a trial court imposes consecutive sentences, it imposes a sentence that is *within* the statutory maximum for each of the offenses and then orders them to be served consecutively. Accordingly, consecutive sentences do not implicate the rule from *Apprendi*."

We think, however, that in so arguing, the state ignores many statements in the cases that describe the problem in terms that are *not* offense specific but that focus, instead, on the quantum of punishment. For example, in *Apprendi*, the Court insisted that

> "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a *greater punishment* than that authorized by the jury's guilty verdict."

530 US at 494 (emphasis added).

More importantly, consecutive sentencing as it occurred in the present case clearly implicates the *principles* expressed in *Apprendi*, *Blakely*, and *Booker*, even if it does not mirror the specific circumstances in those cases. It is important to recognize, in that regard, that, under ORS 137.123, consecutive sentencing in this state is not simply a matter of judicial discretion, but can be imposed only after the sentencing judge has made certain legislatively required findings.[4] At least with respect to offenses that arise out of the same continuous and uninterrupted course of conduct, the jury's issuance of multiple guilty verdicts will *only* support concurrent sentences, unless the judge makes those required findings.

As we have suggested, that arrangement conflicts with the principles underpinning *Apprendi*, *Blakely*, and *Booker*, if not with the *Apprendi* rule itself. Under the statutes that we just have described, the maximum aggregate sentence that may be imposed, based solely on the jury's verdicts and without judicial factfinding, when a defendant is convicted of multiple offenses, assumes that all the sentences run concurrently. But, under the same statutes, additional

---

[4] Under ORS 137.123(2), a court *may* impose either concurrent or consecutive sentences if the underlying offenses "do not arise from the same continuous and uninterrupted course of conduct." Under ORS 137.123(4) and (5), for criminal offenses arising out of a continuous and uninterrupted course of conduct, the sentences "shall" be concurrent unless the court finds one of two facts: (1) that the second crime is not merely incidental to the first but indicates a willingness to commit more than one criminal act; or (2) that the second crime caused or created a risk of greater or qualitatively different injury than the first crime or caused or created a risk of injury to a different victim than the victim involved in the first crime.

factfinding—*judicial* factfinding—is required to justify consecutive sentencing. Under that arrangement, a consecutive sentence necessarily "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict," *Apprendi*, 530 US at 494, based on judicial factfinding,[5] and thereby violates the principles discussed in *Apprendi* and *Blakely*.

We acknowledge that most other courts that have considered this question have reached a different conclusion, usually on the ground that *Apprendi* and its progeny announce a narrow rule that should only be applied in the circumstances in which the United States Supreme Court heretofore has demanded its application. *See, e.g., State v. Cubias*, 155 Wash 2d 549, 120 P3d 929 (2005); *People v. Black*, 41 Cal 4th 799, 161 P3d 1130 (2007); *People v. Wagener*, 196 Ill 2d 269, 752 NE2d 430, *cert den sub nom Wagener v. Illinois*, 534 US 1011 (2001) (all to that effect). The dissent takes the same view. However, we disagree fundamentally with the proposition that the *Apprendi* rule is a narrow one. In fact, we think that the opposite is true—*i.e.*, we think that the rule of *Apprendi* and its progeny establishes the right to a jury trial respecting whatever factors a legislature has identified as permitting the enhancement of an otherwise statutorily limited sentence. The fact that the Court has yet to speak *specifically* to consecutive sentencing in this respect seems to us to prove only that it has not yet had a case on the subject. The *Apprendi*, *Blakely*, and *Booker* decisions all go to great lengths to discuss the broad principles underpinning their particular holdings.[6] It would be wrong for us to engage in an adamantine refusal to get the message.

We think that the application of the *Apprendi* cases to the present problem is obvious. In the present case, the

---

[5] It is self-evident, we trust, that a defendant is exposed to greater punishment if he is required to serve multiple sentences consecutively, rather than concurrently.

[6] For example, in *Booker*, the Court was unimpressed with arguments that the *Apprendi* rule applies narrowly to "any fact that increases the penalty for a crime beyond the prescribed *statutory* minimum" and does not pertain where the prescribed minimum is set by a Commission. The Court emphasized that "[m]ore important than the language used in our holding in *Apprendi* are the principles we sought to vindicate." *Booker*, 543 US at 238.

trial court, over defendant's objection, made a number of findings, already identified, to support its decision to order defendant to serve his sentence on Count 4 (the second burglary count) consecutively to Count 1 (the first burglary count) and Count 2 and Count 5 (the two sexual abuse counts) consecutive to their respective burglaries. Those findings satisfied the requirements of ORS 137.123(2), (4), and (5) for imposition of consecutive sentences. However, the findings were not made by a jury, but were used to increase defendant's punishment beyond the aggregate statutory maximum that the jury's verdict alone would support.[7] The trial court thus imposed the consecutive sentences based on its own fact-finding and in violation of defendant's Sixth Amendment rights. That was error under the rule of *Apprendi* and *Blakely*, as we understand it. The trial court's error was then sustained by the Court of Appeals. That, too, was error. The case must be remanded to the trial court for resentencing.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.,** dissenting.

The majority holds that the rule in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), applies to the question whether a trial court should impose multiple sentences concurrently or consecutively. The majority's decision marks an abrupt departure from years of tradition; it converts what historically has been an issue for trial judges into a federal constitutional question for juries. Neither the holding in *Apprendi* nor its reasoning supports extending that decision to the question of consecutive sentencing. Almost every court that has considered this question has held that *Apprendi* does not apply in this context. I agree

---

[7] One might argue that the trial court's finding that the two burglary counts did not arise from the same continuous and uninterrupted course of conduct inheres in the very fact that the jury found defendant guilty of two separate counts of the same crime. However, given that the indictment did not specify particular dates or otherwise distinguish between the two counts, we do not choose to analyze the case that way.

with those decisions and respectfully dissent from the majority's contrary holding.

When a jury finds a defendant guilty of multiple offenses, a trial court must decide whether the defendant should serve the resulting sentences concurrently or consecutively; that is, the trial court must decide whether the sentences should run simultaneously or whether the defendant should not begin serving the sentence for one offense until the sentence for the other offense ends. As the Court has recognized, the decision whether to impose concurrent or consecutive sentences rests in the sound discretion of the trial court. *See Callanan v. United States*, 364 US 587, 597, 81 S Ct 321, 5 L Ed 2d 312 (1961) (recognizing principle). As one commentator has described it, a trial court's discretion to make that decision is "[f]irmly rooted in common law." Arthur W. Campbell, *Law of Sentencing*, § 9.12 at 278 (2d ed 1991).

Oregon, like many states, has codified the bases for making that discretionary decision; that is, the legislature has said that a court may exercise its discretion to impose consecutive sentences if it finds (1) that the offenses did not occur as part of the same course of conduct or (2) even if the offenses occurred as part of the same course of conduct, one offense was not incidental to the other or the two offenses resulted in separate harms. ORS 137.123. Because Oregon's statute requires those factual findings as a predicate to imposing consecutive sentences and because consecutive sentences result in a longer aggregate sentence than concurrent sentences, the majority concludes that *Apprendi* applies to the decision to impose consecutive sentences.

*Apprendi* does not sweep as broadly as the majority perceives. Rather, the Court has been careful to explain that not "every fact with a bearing on sentencing must be found by a jury." *Jones v. United States*, 526 US 227, 248, 119 S Ct 1215, 143 L Ed 2d 311 (1999). And it has not extended the reach of *Apprendi* beyond the issue that gave rise to it—the problem posed by determinate sentencing schemes that enhance a defendant's sentence beyond the statutory maximum for a single offense on the basis of facts that a judge (rather than a jury) finds by a preponderance of the evidence (rather than beyond a reasonable doubt). *See United States v.*

*Booker*, 543 US 220, 236-37, 125 S Ct 738, 160 L Ed 2d 621 (2005) (explaining that problem posed by determinate sentencing schemes gave rise to the rule in *Apprendi*). The majority errs in extending the rule in *Apprendi* farther than either the holding or the reasoning in that case warrants.

The issue before the Court in *Apprendi* was narrow. In that case, and the cases that have followed it, a trial court had enhanced a defendant's sentence for a single offense beyond the statutory maximum authorized for that offense based on a fact that the court had found during sentencing by a preponderance of the evidence. *See, e.g., Apprendi*, 530 US at 468-69 (describing the defendant's sentence). The constitutional issue before the Court in each of those cases was whether the sentencing factor that the trial court had relied on to enhance the defendant's sentence was, in effect, an element of the offense that a jury had to find beyond a reasonable doubt.[1]

Faced with that issue, the Court held in *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. By its terms, the holding in *Apprendi* does not extend to the question of how a trial court should aggregate multiple sentences. Rather, the holding in *Apprendi* addresses the procedures that a trial court must follow when "the penalty for a crime [exceeds] the prescribed statutory maximum" for *that* crime. That is, *Apprendi* answers the question what are the elements of a single offense that the state must prove beyond a reasonable doubt. It does not answer the separate question of how a trial

---

[1] *Blakely v. Washington*, 542 US 296, 303, 124 S Ct 2531, 159 L Ed 2d 403 (2004) presented a variation on the issue in *Apprendi*: whether a guidelines sentence was a statutory maximum sentence within the meaning of *Apprendi*. The Court held that it was, reasoning that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 US at 303 (emphasis omitted). In *Booker*, 543 US at 243-44, and *Cunningham v. California*, 549 US 270, 127 S Ct 856, 166 L Ed 2d 856 (2007), the Court held that the rule in *Apprendi* applies respectively to the United States' and California's determinate sentencing schemes; both prescribed mandatory sentencing ranges from which trial courts could impose upward departures only after finding certain facts.

court should aggregate multiple sentences when a jury has found a defendant guilty of multiple offenses.

Neither the issue before the Court in *Apprendi* nor the terms of its holding suggest that the Court intended to announce a one-size-fits-all rule that applies to every factual finding that a trial court makes during sentencing—even when the finding affects the length of a defendant's aggregate sentence. To be sure, in the course of describing its reasoning, the Court has sometimes referred broadly to increased or greater punishment. And the majority relies on such a statement to support its holding. But those statements should be viewed in the context of the issue before the Court and not considered in isolation. Doing otherwise attributes more meaning to the words than, in context, they fairly can bear.

Not only is the holding in *Apprendi* narrower than the majority perceives, but the problem that the Court sought to solve demonstrates that the holding does not extend as far as the majority concludes. The Court first noted the problem in *Mullaney v. Wilbur*, 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975). *See Apprendi*, 530 US at 484 (identifying *Mullaney* as initially recognizing problem). The Court had explained in *Mullaney* that, without some constitutional check, a state could avoid the due process requirement that it prove every element of a crime beyond a reasonable doubt "merely by 'redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment' " and permitting the trial court to find those factors by only a preponderance of the evidence. *See Apprendi*, 530 US at 485 (quoting *Mullaney*, 421 US at 698) (brackets in original).

Ordinarily, a legislature has broad authority to define (or redefine) the elements of a crime, and the problem that *Mullaney* posed and the Court faced over the next 25 years was how to articulate the limits that the constitution places on that authority. After *Mullaney*, the Court explained in *Patterson v. New York*, 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977), that the legislature's authority to define the elements of a crime "is not subject to proscription under the Due Process Clause unless it offends some principle of justice

so rooted in the traditions and conscience of our people as to be ranked fundamental." *Id.* at 201-02 (internal quotation marks omitted). Although the Court recognized in *Patterson* that "there are obviously constitutional limits beyond which the States may not go in this regard," it did not attempt to identify those limits beyond noting that a legislature may not " 'declare an individual guilty or presumptively guilty of a crime.' " *Id.* (quoting *McFarland v. American Sugar Rfg. Co.*, 241 US 79, 86, 36 S Ct 498, 60 L Ed 899 (1916)).

The broad authority that the Court recognized in *Patterson* invited statutes that permitted trial courts to find various "sentencing factors" by a preponderance of the evidence even though those sentencing factors could affect, often dramatically, the length of the sentence that a defendant would have to serve. The Court first addressed those types of statutes in 1986 in *McMillan v. Pennsylvania*, 477 US 79, 106 S Ct 2411, 91 L Ed 2d 67 (1986), and it returned to the issue 12 years later in *Almendarez-Torres v. United States*, 523 US 224, 118 S Ct 1219, 140 L Ed 2d 350 (1998). In each of those cases, the legislature had provided that the length of a defendant's sentence for an offense would turn on facts that the trial court found by a preponderance of the evidence during sentencing,[2] and the issue was whether, as a matter of constitutional law, those sentencing factors constituted elements of the offense.

In resolving that issue, the Court considered, among other things, whether the statute declared the defendant presumptively guilty of a crime, whether proof of the sentencing factor could increase the defendant's sentence "from a nominal fine to a mandatory life sentence," whether the legislature had tailored the sentencing factor "to be a tail which wags the dog of the substantive offense," whether the statute "create[d] a separate offense calling for a separate penalty," and whether the sentencing factor altered the maximum penalty for the offense. *See McMillan*, 477 US at 86-88 (setting out those factors); *Almendarez-Torres*, 523 US at 242-43

---

[2] In *McMillan*, the legislature had directed the trial court to impose a mandatory minimum sentence if the defendant had "visibly possessed" a gun during the commission of the crime. 477 US at 81. In *Almendarez-Torres*, Congress had authorized an enhanced sentence, beyond that authorized for the commission of the crime, if the defendant had a prior felony conviction. 523 US at 226.

(same). Applying those factors, the Court held that the sentencing factors at issue in *McMillan* and *Almendarez-Torres* were not elements of the charged offenses, which the state had to prove beyond a reasonable doubt.

The Court approached the same issue differently in *Apprendi* and held, as Justice Scalia had urged in his dissenting opinion in *Almendarez-Torres*, that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 US at 490; *see Almendarez-Torres*, 523 US at 251 (Scalia, J., dissenting) (reasoning that a similar test should apply). The Court did so, as it later explained in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), to avoid the subjectivity inherent in the multi-factor test that the Court had applied in *McMillan* and *Almendarez-Torres*. As the Court explained in *Blakely*, the multi-factor test that it had applied in *McMillan* and *Almendarez-Torres* reduced to nothing more than asking whether in enacting sentencing factors the legislature had gone "too far."[3] Far from seeking to require juries to decide beyond a reasonable doubt every fact that affects sentencing, the rule in *Apprendi* serves only to provide a nonsubjective means of determining when the legislature's efforts to redefine the elements of a single offense will stay within constitutional bounds.

Were there any doubt about the scope of the rule from *Apprendi*, the passage that the majority quotes from *Booker* removes it. As that passage makes clear, the rule in *Apprendi* arose in response to "a new trend in the legislative regulation of sentencing" that the Court first recognized in 1986 in *McMillan* when it "considered the significance of

---

[3] The Court reasoned in *Blakely* that, under the multi-factor test in *McMillan* and *Almendarez-Torres*,

"legislatures may establish legally essential sentencing factors *within limits*— limits crossed when, perhaps, the sentencing factor is a 'tail which wags the dog of the substantive offense.' *McMillan*, 477 U.S., at 88. What this means in operation is that the law must not go *too far*—it must not exceed the judicial estimation of the proper role of the judge. * * * The subjectivity of this standard is obvious."

542 US at 307 (emphasis in original).

facts selected by legislatures that * * * increased the range of sentences possible for the underlying crime." 543 US at 236. That is, the Court adopted the rule in *Apprendi* to address determinate sentencing schemes that defined the maximum sentence for an offense but permitted a trial court to enhance the sentence for that offense if the trial court found certain "sentencing factors" by a preponderance of the evidence.

The rule in *Apprendi* provides a means for determining whether those "sentencing factors" are elements of the offense that the state has to prove beyond a reasonable doubt. It does not have a broader reach. Indeed, the Court was careful to explain in *Booker* that the rule it announced in *Apprendi* was not intended to displace traditional sentencing practices. As the Court explained, "it is the new circumstances [first recognized in 1986], not a tradition or practice that the new circumstances have superseded, that have led [the Court] to the answer first considered in *Jones* and developed in *Apprendi* and subsequent cases culminating with this one." *Id.* at 237. When the Court has explained, as it did in *Booker*, that the rule in *Apprendi* was intended to solve the problem posed by determinate sentencing schemes, we should be hesitant to extend *Apprendi*'s holding beyond the limits that the Court has identified. That is especially true when, as in this case, extending *Apprendi* displaces authority that trial courts traditionally have exercised—*i.e.*, the authority to decide how to aggregate multiple sentences.

Not only is the majority's decision today at odds with the holdings and reasoning of the Supreme Court's cases, but it is out of line with the clear weight of authority. In states that require factual findings as a predicate to imposing consecutive sentences, almost every court that has considered the issue has held that *Apprendi* does not apply to the decision to impose consecutive sentences.[4] Specifically, the courts

---

[4] Procedurally, the decision to impose consecutive or concurrent sentences divides into three categories. First, some states presume, by statute or decision, that sentences should be imposed consecutively but permit "downward departures" from that presumption. Second, other states leave the issue to the unfettered discretion of the trial court. Third, some states, either by statute or judicial decision, require trial courts to find certain facts as a predicate to exercising their discretion to impose consecutive sentences. Oregon falls into the third category, as do many states. In referring to decisions from other jurisdictions, I refer only to

in Colorado, Illinois, Indiana, Iowa, Louisiana, Maine, Minnesota, New Jersey, and Tennessee have held that *Apprendi* does not apply to the decision whether to impose consecutive sentences. *See People v. Lehmkuhl*, 117 P3d 98 (Colo Ct App 2004), *cert den*, 546 US 1109 (2006); *People v. Wagener*, 196 Ill 2d 269, 752 NE2d 430 (2001); *Hong v. Sims*, 221 Fed App'x 455 (7th Cir 2007) (considering constitutionality of Illinois sentencing law); *Smylie v. State*, 823 NE2d 679 (Ind), *cert den*, 546 US 976 (2005); *State v. Jacobs*, 644 NW2d 695 (Iowa 2001); *State v. Hunter*, 907 So 2d 200 (La Ct App 2005), *rev den*, 925 So 2d 507 (La 2006); *State v. Keene*, 927 A2d 398 (Me 2007); *State v. Senske*, 692 NW2d 743 (Minn Ct App 2005); *State v. Abdullah*, 184 NJ 497, 878 A 2d 746 (2005); *State v. Davis*, 2007 Tenn Crim App LEXIS 580 (July 19, 2007).

To be sure, there is a split among the states that have considered this recurring issue of federal law—a split that the majority's decision deepens and confirms. One other state has held, as the majority does, that *Apprendi* applies in this context, *State v. Foster*, 109 Ohio St 3d 1, 845 NE2d 470 (2006), and another state's decisions provide mixed support for the majority's decision. *Compare State v. Cubias*, 155 Wn 2d 549, 120 P3d 929 (2005) (holding that *Apprendi* does not apply to a factual prerequisite to imposing consecutive sentences), *with In re VanDelft*, 158 Wn 2d 731, 147 P3d 573 (2006) (holding that *Apprendi* does apply to a factual prerequisite to imposing consecutive sentences).[5] Although the majority can count at least one and perhaps two states in its corner, the overwhelming number of state courts (and federal courts considering the constitutionality of state sentencing statutes) have held that *Apprendi* does not apply to the decision to impose consecutive sentences. Because I would not extend the rule in *Apprendi* beyond either the issue or the

decisions from jurisdictions that, like Oregon, require factual findings as a predicate to imposing consecutive sentences.

[5] In *Cubias*, a state statute required the trial court to find that the offenses arose out of separate and distinct criminal conduct as a prerequisite to imposing consecutive sentences. 155 Wn 2d at 552. In *VanDelft*, a state statute presumed that the sentences would be concurrent but permitted the trial court to impose consecutive sentences if it made certain factual findings. 158 Wn 2d at 741-42. For the purposes of *Apprendi*, the two statutes are analytically identical. The only difference is that the latter statute poses the *Apprendi* issue in a more obvious way.

problem that the Court sought to solve in that case, I respect-fully dissent.

Balmer, J., joins in this dissent.