*173 Justice Scalia,
with whom The Chief Justice, Justice Souter, and Justice Thomas join, dissenting.
The rule of Apprendi v. New Jersey, 530 U. S. 466 (2000), is clear: Any fact — other than that of a prior conviction— that increases the maximum punishment to which a defendant may be sentenced must be admitted by the defendant or proved beyond a reasonable doubt to a jury. Oregon’s sentencing scheme allows judges rather than juries to find the facts necessary to commit defendants to longer prison sentences, and thus directly contradicts what we held eight years ago and have reaffirmed several times since. The Court’s justification of Oregon’s scheme is a virtual copy of the dissents in those cases.
The judge in this case could not have imposed a sentence of consecutive prison terms without making the factual finding that the defendant caused “separate harms” to the victim by the acts that produced two convictions. See 343 Ore. 248, 268, 170 P. 3d 1049, 1060 (2007) (Kistler, J., dissenting). There can thus be no doubt that the judge’s factual finding was “essential to” the punishment he imposed. United States v. Booker, 543 U. S. 220, 232 (2005). That “should be the end of the matter.” Blakely v. Washington, 542 U. S. 296, 313 (2004).
Instead, the Court attempts to distinguish Oregon’s sentencing scheme by reasoning that the rule of Apprendi applies only to the length of a sentence for an individual crime and not to the total sentence for a defendant. I cannot understand why we would make such a strange exception to the treasured right of trial by jury. Neither the reasoning of the Apprendi line of cases, nor any distinctive history of the factfinding necessary to imposition of consecutive sentences, nor (of course) logic supports such an odd rule.
We have taken pains to reject artificial limitations upon the facts subject to the jury-trial guarantee. We long ago made clear that the guarantee turns upon the penal consequences attached to the fact, and not to its formal definition as an element of the crime. Mullaney v. Wilbur, 421 U. S. *174 684, 698 (1975). More recently, we rejected the contention that the “aggravating circumstances” that qualify a defendant for the death penalty did not have to be found by the jury. “If,” we said, “a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.” Ring v. Arizona, 536 U. S. 584, 602 (2002). A bare three years ago, in rejecting the contention that the facts determining application of the Federal Sentencing Guidelines did not have to be found by the jury, we again set forth the pragmatic, practical, nonformalistic rule in terms that cannot be mistaken: The jury must “find the existence of ‘ “any particular fact” ’ that the law makes essential to [a defendant’s] punishment.” Booker, supra, at 232 (quoting Blakely, supra, at 301).
This rule leaves no room for a formalistic distinction between facts bearing on the number of years of imprisonment that a defendant will serve for one count (subject to the rule of Apprendi) and facts bearing on how many years will be served in total (now not subject to Apprendi). There is no doubt that consecutive sentences are a “greater punishment” than concurrent sentences, Apprendi, supra, at 494. We have hitherto taken note of the reality that “a concurrent sentence is traditionally imposed as a less severe sanction than a consecutive sentence.” Ralston v. Robinson, 454 U. S. 201, 216, n. 9 (1981) (emphasis deleted). The decision to impose consecutive sentences alters the single consequence most important to convicted noncapital defendants: their date of release from prison. For many defendants, the difference between consecutive and concurrent sentences is more important than a jury verdict of innocence on any single count: Two consecutive 10-year sentences are in most circumstances a more severe punishment than any number of concurrent 10-year sentences.
To support its distinction-without-a-difference, the Court puts forward the same (the very same) arguments regarding *175 the history of sentencing that were rejected by Apprendi. Here, it is entirely irrelevant that common-law judges had discretion to impose either consecutive or concurrent sentences, ante, at 168-169; just as there it was entirely irrelevant that common-law judges had discretion to impose greater or lesser sentences (within the prescribed statutory maximum) for individual convictions. There is no Sixth Amendment problem with a system that exposes defendants to a known range of sentences after a guilty verdict: “In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.” Blakely, supra, at 309. The same analysis applies to a system where both consecutive and concurrent sentences are authorized after only a jury verdict of guilt; the burglar-rapist knows he is risking consecutive sentences. Our concern here is precisely the same as our concern in Apprendi: What happens when a State breaks from the common-law practice of discretionary sentences and permits the imposition of an elevated sentence only upon the showing of extraordinary facts? In such a system, the defendant “is entitled to” the lighter sentence “and by reason of the Sixth Amendment^] the facts bearing upon that entitlement must be found by a jury.” Blakely, supra, at 309.
The Court protests that in this case there is no “encroachment” on or “erosion” of the jury’s role because traditionally it was for the judge to determine whether there would be concurrent terms. Ante, at 169-170. Alas, this argument too was made and rejected in Apprendi. The jury’s role was not diminished, the Apprendi dissent contended, because it was traditionally up to judges, not juries, to determine what the sentence would be. 530 U. S., at 556, 559 (opinion of Breyer, J.). The Court’s opinion acknowledged that in the 19th century it was the practice to leave sentencing up to the judges, within limits fixed by law. But, it said, that practice had no bearing upon whether the jury must find the fact where a law conditions the higher sentence upon the *176 fact. The jury’s role is diminished when the length of a sentence is made to depend upon a fact removed from its determination. Id., at 482-483. The same is true here.
The Court then observes that the results of the Oregon system could readily be achieved, instead, by a system in which consecutive sentences are the default rule but judges are permitted to impose concurrent sentences when they find certain facts. Ante, at 171. Undoubtedly the Sixth Amendment permits a system in which judges are authorized (or even required) to impose consecutive sentences unless the defendant proves additional facts to the Court’s satisfaction. See ibid. But the permissibility of that alternative means of achieving the same end obviously does not distinguish Apprendi, because the same argument (the very same argument) was raised and squarely rejected in that case:
“If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.” 530 U. S., at 491, n. 16.
Ultimately, the Court abandons its effort to provide analytic support for its decision, and turns to what it thinks to be the “‘salutary objectives’” of Oregon’s scheme. Ante, at 171. “Limiting judicial discretion,” we are told, promotes sentences proportionate to the gravity of the offense, and reduces disparities in sentence length. Ibid. The same argument (the very same argument) was made and rejected in Booker, see 543 U. S., at 244, and Blakely, see 542 U. S., at 313. The protection of the Sixth Amendment does not turn on this Court’s opinion of whether an alternative scheme is *177 good policy, or whether the legislature had a compassionate heart in adopting it. The right to trial by jury and proof beyond a reasonable doubt is a given, and all legislative policymaking — good and bad, heartless and compassionate— must work within the confines of that reality. Of course the Court probably exaggerates the benign effect of Oregon’s scheme, as is suggested by the defense bar’s vigorous objection, evidenced by the participation of the National Association of Criminal Defense Lawyers as amicus in favor of respondent. Even that exaggeration is a replay of the rejected dissent in one of our prior cases. There the Court responded: “It is hard to believe that the National Association of Criminal Defense Lawyers was somehow duped into arguing for the wrong side.” Id., at 312.
Finally, the Court summons up the parade of horribles assembled by the amici brief of 17 States supporting Oregon. It notes that “[t]rial judges often find facts” in connection with “a variety of sentencing determinations other than the length of incarceration,” and worries that even their ability to set the length of supervised release, impose community service, or order entry into a drug rehabilitation program may be called into question. Ante, at 171. But if these courses reduce rather than augment the punishment that the jury verdict imposes, there is no problem. The last horrible the Court invokes is the prospect of bifurcated or even trifurcated trials in order to have the jury find the facts essential to consecutive sentencing without prejudicing the defendant’s merits case. Ante, at 172. That is another déjá vu and déjá rejeté; we have watched it parade past before, in several of our Apprendi-related opinions, and have not saluted. See Blakely, supra, at 336-337 (Breyer, J., dissenting); Apprendi, supra, at 557 (same).
* * *
The Court’s peroration says that “[t]he jury-trial right is best honored through a ‘principled rationale’ that applies the rule of the Apprendi cases ‘within the central sphere of their *178 concern.’” Ante, at 172 (quoting Cunningham v. California, 549 U. S. 270, 295 (2007). (Kennedy, J., dissenting)). Undoubtedly so. But we have hitherto considered “the central sphere of their concern” to be facts necessary to the increase of the defendant’s sentence beyond what the jury verdict alone justifies. “If the jury’s verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.” Id., at 290 (opinion of the Court). If the doubling or tripling of a defendant’s jail time through fact-dependent consecutive sentencing does not meet this description, nothing does. And as for a “principled rationale”: The Court’s reliance upon a distinction without a difference, and its repeated exhumation of arguments dead and buried by prior cases, seems to me the epitome of the opposite. Today’s opinion muddies the waters, and gives cause to doubt whether the Court is willing to stand by Apprendi’s interpretation of the Sixth Amendment’s jury-trial guarantee.